672 S.E.2d 606

**Thomas P. STURM, Plaintiff Below, Appellant**

v.

**THE BOARD OF EDUCATION OF KANAWHA COUNTY, Defendant Below, Appellee.**

**No. 33854.**

Supreme Court of Appeals of West Virginia.

Submitted Sept. 23, 2008.

Decided Dec. 2, 2008.

Michael T. Clifford, Esq., Charleston, and Barbara Harmon Schamberger, Esq., Clay, for Thomas P. Sturm.

Charles R. Bailey, Esq., Kelly C. Morgan, Esq., Vaughn T. Sizemore, Esq., Bailey & Wyant, Charleston, for the Board of Education of Kanawha County.

MAYNARD, Chief Justice:[1]

Thomas Sturm, the appellant, brought several claims against the Kanawha County Board of Education in which he alleged that the Board provided him with a defective education. In its April 3, 2007, order, the Circuit Court of Kanawha County dismissed with prejudice Mr. Sturm's state law claims for failure to exhaust his administrative remedies, and Mr. Sturm now appeals. For the reasons that follow, we affirm the circuit court's order.

## I.

## FACTS

The appellant was in a special education program during his public schooling in Kanawha County.[2] He graduated from Sissonville High School in May 2004. In July 2005, the appellant was awarded Social Security Income benefits after a finding that he is functionally illiterate, unable to perform activities within a schedule, unable to maintain regular attendance, and had no vocationally past relevant work.

The appellant filed a complaint in the Circuit Court of Kanawha County against the Kanawha County Board of Education, the appellee, in April 2006, in which he asserted federal causes of action under the Individuals With Disabilities Education Act, 20 U.S.C. §§ 1401 et seq.; Section 504 of the Rehabilitation Act, 29 U.S.C. § 728; the Americans With Disabilities Act, 42 U.S.C. §§ 12161 et seq.; and 42 U.S.C. § 1983 of the Civil Rights Act. He also asserted state law claims under Policy 2419 which is known as Regulations for the Education of Students with Exceptionalities, 126 C.S.R. § 16; the West Virginia Human Rights Act, W.Va.Code §§ 5–11–1 et seq.; and W.Va.Code § 18–1–4 (1996), concerning the provision of a thorough education;[3] as well as claims for negligence and negligent infliction of emotional distress.

The Kanawha County Board of Education ("the Board") removed the case to the United States District Court for the Southern District of West Virginia on the grounds that some of the appellant's claims were based on federal laws. The Board then moved to dismiss the appellant's federal claims based on the fact that he had failed to exhaust his administrative remedies under the federal laws at issue. By memorandum opinion dated June 1, 2006, the district court dismissed all of the appellant's federal claims without prejudice and remanded his state law claims to the Circuit Court of Kanawha County. The district court found that the appellant failed to exhaust his administrative remedies under the Individuals With Disabilities Education Act.

---

1. Pursuant to an administrative order entered on September 11, 2008, the Honorable Thomas E. McHugh, Senior Status Justice, was assigned to sit as a member of the Supreme Court of Appeals of West Virginia commencing September 12, 2008, and continuing until the Chief Justice determines that assistance is no longer necessary, in light of the illness of Justice Joseph P. Albright.

2. The appellant was diagnosed with Attention Deficit Hyperactive Disorder in 1993 and has

been treated for the condition since. Also, the appellant indicates that his IQ is in the low average range of intellectual ability, and that it, along with other conditions, required him to participate in special education classes. In 1999, the appellant was diagnosed with a depressive disorder which resulted in his hospitalization.

3. W.Va.Code § 18–1–4 was amended by the Legislature in 2008.

Thereafter, the Board filed a motion to dismiss the appellant's state law claims pursuant to Rule 12(b)(6) of the West Virginia Rules of Civil Procedure for failure to exhaust his administrative remedies provided in the Regulations for the Education of Exceptional Students in Policy 2419 at 126 C.S.R. § 16. By order of April 3, 2007, the circuit court granted the Board's motion. The appellant now appeals this order.

## II.

## STANDARD OF REVIEW

 The appellant's complaint was dismissed for "failure to state a claim upon which relief can be granted" under Rule of Civil Procedure 12(b)(6). This Court has held that "[a]ppellate review of a circuit court's order granting a motion to dismiss a complaint is *de novo*." Syllabus Point 2, *State ex rel. McGraw v. Scott Runyan Pontiac–Buick*, 194 W.Va. 770, 461 S.E.2d 516 (1995). In other words, "[w]hen a circuit court *grants* a Rule 12(b)(6) motion and dismisses a complaint for failure to state a claim upon which relief can be granted, appellate review of the circuit court's dismissal of the complaint is *de novo*." *Kessel v. Leavitt*, 204 W.Va. 95, 119, 511 S.E.2d 720, 744 (1998) (citations omitted). We have further explained that "[t]he purpose of a motion under Rule 12(b)(6) is to test the formal sufficiency of the complaint." *Collia v. McJunkin*, 178 W.Va. 158, 159, 358 S.E.2d 242, 243 (1987) (citations omitted). Additionally, "[m]otions to dismiss are generally viewed with disfavor because the complaint is to be construed in the light most favorable to the plaintiff and its allegations are to be taken as true." *Collia*, 178 W.Va. at 160, 358 S.E.2d at 243–244 (citation omitted). Finally, "[t]he trial court, in appraising the sufficiency of a complaint on a Rule 12(b)(6) motion, should not dismiss the complaint unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)." Syllabus Point 3, *Chapman v. Kane Transfer Co. Inc.*, 160 W.Va. 530, 236 S.E.2d 207 (1977). With these principles in mind, we now review the circuit court's decision.

## III.

## DISCUSSION

The purpose of the federal Individuals With Disabilities Education Act ("the IDEA") is to ensure that children with disabilities receive a "free appropriate public education." 20 U.S.C. § 1400(c)(3). A free and appropriate public education is defined as services that,

(A) have been provided at public expense, under public supervision and direction, and without charge;

(B) meet the standards of the State educational agency;

(C) include an appropriate preschool, elementary school, or secondary school education in the State involved; and

(D) are provided in conformity with the individualized education program required under section 1414(d) of this title.

20 U.S.C. § 1401(9). An individualized education plan or "IEP" is essentially a written plan developed for each child with a disability that is designed to meet that child's specific educational needs. 20 U.S.C. § 1414(d)(1)(A). The IDEA does not confer upon parents a right to immediately seek redress in federal court for the alleged denial of a free appropriate public education under the Act. Rather, the IDEA contains a detailed administrative scheme that must be exhausted prior to filing a federal claim. 20 U.S.C. § 1415(1); *Doe v. Alfred*, 906 F.Supp. 1092 (S.D.W.Va.1995). The United States Supreme Court has explained that the IDEA

confers upon disabled students an enforceable substantive right to public education in participating States and conditions federal financial assistance upon a State's compliance with the substantive and procedural goals of the Act. Accordingly, States seeking to qualify for federal funds must develop policies assuring all disabled children the "right to a free appropriate public education," and must file with the Secretary of Education formal plans mapping out in detail the programs, procedures, and timetables under which they will effectuate these policies.

*Honig v. Doe,* 484 U.S. 305, 310–311, 108 S.Ct. 592, 98 L.Ed.2d 686 (1988) (citations and footnote omitted).

Courts have found that a complainant must exhaust his or her administrative remedies under the IDEA prior to bringing a civil action. In *Doe v. Alfred, supra,* relied upon by the federal district court in dismissing the appellant's federal claims, the plaintiffs filed suit against several education officials alleging a violation of their child's right to a free appropriate public education as guaranteed by the IDEA, the 14th Amendment to the United States Constitution, and Article III, Section 10 of the West Virginia Constitution. The plaintiffs sought damages and injunctive relief pursuant to 42 U.S.C. § 1983. The defendants filed a motion to dismiss the plaintiffs' suit primarily on the basis that the plaintiffs failed to exhaust administrative remedies available to them under the IDEA. The United States District Court for the Southern District of West Virginia granted the defendants' motion to dismiss after finding that exhaustion of administrative remedies was required for both the plaintiffs' IDEA claim and their constitutional claims. The district court based its decision in part on the language of 20 U.S.C. § 1415(f) providing that,

> Any party aggrieved by the findings and decision made ... [during the administrative hearing and appeal process described in 20 U.S.C. § 1415(b)(2) and (c)] shall have the right to bring a civil action with respect to the complaint presented pursuant to this section, which action may be brought in any State court of competent jurisdiction or in a district court of the United States without regard to the amount in controversy[.]

*Doe,* 906 F.Supp. at 1096, *citing* 20 U.S.C. § 1415(e)(2).[4] Additional language of the IDEA relied upon by the district court indicated that,

> Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, title V of the Rehabilitation Act of 1973, or other Federal statutes protecting the rights of children and youth with disabilities, except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsection (b)(2) and (c) of this section shall be exhausted to the same extent as would be required had the action been brought under this subchapter.

*Doe,* 906 F.Supp. at 1098, *citing* 20 U.S.C. § 1415(f).[5] Therefore, it is clear that an individual must exhaust his or her administrative remedies under the IDEA prior to bringing a civil action alleging a violation of the Act.

The West Virginia counterpart to the IDEA is found in W.Va.Code §§ 18–20–1, *et seq.,* titled "Education of Exceptional Children." Pursuant to W.Va.Code § 18–20–1 (1990), the State Board of Education is authorized to adopt rules to develop a program to assure that all exceptional children in the state receive an education in accordance with the mandates of state and federal laws. Pursuant to this authorization, the State Board developed Policy 2419 which is found at 126 C.S.R. § 16. Like the IDEA, Policy 2419 provides a comprehensive administrative scheme for addressing the complaints of parents and students. This scheme includes providing notice of procedural rights; the right to mediation; dispute resolution mechanisms consisting of the right to file a complaint with the appropriate state agency; the right to file a due process complaint with the district superintendent or the State Depart-

---

4. The code section cited by the district court now appears at 20 U.S.C. § 1415(i)(2)(A).

5. This provision now appears at 20 U.S.C. § 1415(1), and has been amended to read as follows:

> Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990 [42 U.S.C.A. § 12101 et seq.], title V of the Reha-

bilitation Act of 1973 [29 U.S.C.A. § 791 et seq.], or other Federal laws protecting the rights of children with disabilities, except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (f) and (g) of this section shall be exhausted to the same extent as would be required had the action been brought under this subchapter.

ment of Education; and the right to have one's complaint heard and decided by an impartial hearing officer. Any party aggrieved by the decision of the hearing officer may then bring a civil action.

■ The general rule in this Court with regard to the exhaustion of administrative remedies provides "that where an administrative remedy is provided by statute or by rules and regulations having the force and effect of law, relief must be sought from the administrative body, and such remedy must be exhausted before the courts will act." Syllabus Point 1, *Daurelle v. Traders Fed. Sav. & Loan Assn.*, 143 W.Va. 674, 104 S.E.2d 320 (1958). *See also State ex rel. Fields v. McBride*, 216 W.Va. 623, 609 S.E.2d 884 (2004) (same); *State ex rel. Miller v. Reed*, 203 W.Va. 673, 510 S.E.2d 507 (1998) (same); *Hechler v. Casey*, 175 W.Va. 434, 333 S.E.2d 799 (1985) (same); *McGrady v. Callaghan*, 161 W.Va. 180, 244 S.E.2d 793 (1978) (same); *State ex rel. Burchett v. Taylor*, 150 W.Va. 702, 149 S.E.2d 234 (1966) (same). Courts have recognized that this rule serves several useful functions including:

> (1) permitting the exercise of agency discretion and expertise on issues requiring these characteristics; (2) allowing the full development of technical issues and a factual record prior to court review; (3) preventing deliberate disregard and circumvention of agency procedures established by Congress [or the Legislature]; and (4) avoiding unnecessary judicial decision by giving the agency the first opportunity to correct any error.

*Doe*, 906 F.Supp. at 1097, *quoting Association for Commun. Living v. Romer*, 992 F.2d 1040, 1044 (10th Cir.1993).

■ We have also recognized exceptions to the rule requiring the exhaustion of remedies. In Syllabus Point 2 of *Wiggins v. Eastern Associated Coal Corp.*, 178 W.Va. 63, 357 S.E.2d 745 (1987), this Court held that "[w]here the available administrative remedy is inadequate, this Court recognizes an exception to the general rule that where a new right is created by statute, the remedy can

be only that which the statute prescribes." Also, "[t]his Court will not require the exhaustion of administrative remedies where such remedies are duplicative or the effort to obtain them futile." Syllabus Point 6, *Wiggins*. *See also* Syllabus Point 1 of *State ex rel. Bd. of Educ. v. Casey*, 176 W.Va. 733, 349 S.E.2d 436 (1986) ("The doctrine of exhaustion of administrative remedies is inapplicable where resort to available procedures would be an exercise in futility."). Finally, we have stated that "[t]he burden of proving an exception to the exhaustion requirement rests on the party seeking to avoid the mandate." *Doe*, 906 F.Supp. at 1097 (footnote and citation omitted).

■ Based on the fact that the IDEA, upon which our Policy 2419 is based, requires exhaustion of administrative remedies, and our rule that generally requires exhaustion of remedies where such remedies are available, we now hold that prior to bringing a civil suit for failure to provide a free appropriate public education under the Regulations for the Education of Students with Exceptionalities, Policy 2419, 126 C.S.R. § 16, a complainant must first exhaust his or her administrative remedies provided under the regulations or meet the burden of proving an exception to the exhaustion requirement. We will now apply this rule to the facts of this case.

■ Neither the appellant nor his parents exhausted the administrative remedies provided for in Policy 2419.[6] Therefore, it is incumbent upon the appellant to prove an exception to the exhaustion requirement. In his brief to this Court, the appellant argues that the circuit court erred in dismissing his claims for failure to exhaust his administrative remedies when, in fact, no administrative remedies were available to the appellant after he graduated. This argument is not well taken. The fact is the appellant and/or his parents had twelve years in which to utilize their administrative remedies to address any alleged deficiencies in the appellant's education, and they failed to do so. Obviously, a party cannot stand mute until the time in

---

**6.** According to Policy 2419, Chapter 10, Section 9A, "Special education rights will transfer from the parent to the adult student when the student turns eighteen years of age unless a court has appointed a legal guardian to represent the educational interests of the student."

which to seek redress of perceived wrongs has passed and then complain that he or she no longer has a remedy.[7]

The appellant alleges in his complaint that even though his grades fell below a C minus, no reports were issued and no meetings were held to discuss his grades as was mandated by his IEP. He also asserts that numerous IEP meetings were held in which proper notice was not given and/or proper and appropriate representatives were not present. Presuming these allegations to be true, there is no indication that the appellant's parents were not informed of their procedural rights under Policy 2419 or that they were prevented by the Board from knowing or exercising their rights.[8] There likewise is no indication that the appellant and/or his parents were unaware of the appellant's educational progress as reflected in his grades. Nevertheless, the appellant and/or his parents apparently never took any affirmative steps via the administrative process to address perceived inadequacies in the appellant's education prior to his graduation. Therefore, finding no indication that the numerous administrative remedies provided under Policy 2419 would have been inadequate or futile had the appellant and/or his parents sought them in a timely manner, we find that the appellant has failed to meet the burden of proving an exception to the exhaustion requirement.[9]

7. The Board states in its brief that even though it is no longer required to provide a free appropriate public education to students who have graduated, a graduated student is not prohibited from initiating an impartial due process hearing on the basis that the services identified in his or her IEP were not met. The Board bases this assertion on language in Policy 2419, Chapter 11, Section 3, Part A that provides "[a] due process complaint must be initiated within two years of the date the parent/adult student or district knew or should have known of the disputed decision or alleged action that forms the basis for the complaint." The Board further asserts that in the past, it has not disputed jurisdiction when a due process complaint was filed within two years after graduation and the alleged deficiency was related to a service that was required by the student's IEP. The Board therefore concludes that the appellant had two years from the date of his graduation to initiate a due process hearing under Policy 2419, and he failed to do so.

8. Pursuant to the current version of Policy 2419, Chapter 10, Section 2,

To facilitate their informed participation, parents/adult students are informed of the extensive procedural safeguards through the Procedural Safeguards Available to Parents and Students with Exceptionalities document.
A. Procedural Safeguards Notice Contents
The notice includes a full explanation of the following procedural safeguards:
1. Independent educational evaluation;
2. Prior written notice;
3. Parent/adult student consent;
4. Access to educational records;
5. Opportunity to resolve complaints through due process complaints or the state complaint process, including:
a. Time period in which to file a complaint;
b. The opportunity for the agency to resolve the complaint;
c. The difference between the due process and state complaint procedures, including the jurisdiction of each procedure, what issues may be raised, filing and decisional timelines, and relevant procedures;
6. The availability of mediation;
7. The student's placement during pendency of decisions in due process hearings;
8. Procedures for students who are subject to placement in an interim alternative educational setting;
9. Requirements for unilateral placements by parents of students in private schools at public expense;
10. Due process hearings, including requirements for disclosure of evaluation results and recommendations;
11. Civil actions; and
12. Attorneys' fees.
B. When the Procedural Safeguards Notice Is Provided
The district will provide the parent/adult student a procedural safeguards notice at least once per school year, that is, one copy between July 1 and June 30. Because notice must be provided on each of the following occasions, it may be necessary to provide more than one notice during a school year:
• Upon an initial referral or a parent/adult student request for evaluation;
• Upon the first occurrence of a filing of a due process complaint or state complaint alleging violations of Part B of IDEA 2004;
• Upon notice of a disciplinary removal resulting in a change of placement; and
• Upon request by the parent/adult student.

9. In his brief, the appellant claims that the circuit court erred in granting the Board's motion to dismiss while material facts were still in dispute and no discovery had been obtained. As noted above, however, the purpose of a Rule 12(b)(6) motion is to test the sufficiency of the complaint and in doing so, allegations in the complaint are presumed to be true. Therefore, issues of disputed facts and discovery are not relevant to our analysis herein.

The appellant also appears to contend that the Board's motion to dismiss should have been

The appellant further contends that the circuit court erred in dismissing his claims under the West Virginia Human Rights Act and W.Va.Code §§ 18–1–4 *et seq.*, as well as his claims for negligence, and the negligent infliction of emotional distress. In support of his argument, the appellant cites *Ronnie Lee S. v. Mingo Co. Bd. of Educ.*, 201 W.Va. 667, 500 S.E.2d 292 (1997). In *Ronnie Lee S.*, the plaintiffs, who were the parents of Ronnie Lee S., an autistic child, brought an action for damages and injunctive relief against the Mingo County Board of Education and several of its employees arising out of the defendants' alleged conduct in strapping Ronnie Lee S. to a chair while he attended school. The circuit court granted summary judgment on behalf of the defendants after determining that the action was precluded by the IDEA and by a written settlement agreement executed by the plaintiffs and the defendants concerning various matters the plaintiffs had contested under the IDEA with regard to Ronnie's program of education.

In *Ronnie Lee S.*, this Court found that the circuit court erred in ruling that the plaintiffs should have litigated the use of the restraint as a part of their administrative remedies under the IDEA rather than filing an action in circuit court. First, we recognized that the settlement agreement was reached after the plaintiffs had instituted a "due process" proceeding before the State Board of Education alleging a failure of the defendants to provide Ronnie with a free appropriate public education. We explained that "[u]nder the circumstances herein, the execution of [the settlement agreement] constituted, in effect, an exhaustion of the appellant's· administrative remedies under the Individuals with Disabilities Education Act." *Ronnie Lee S.*, 201 W.Va. at 673, 500 S.E.2d at 298. Next, we determined that the circuit court erred in ruling that the plaintiffs' claims for damages and injunctive relief

should have been settled in the administrative process. This Court reasoned that

> the appellants are correct in their assertion that the circuit court action was essentially a damage claim involving allegations of the intentional or reckless violation of the appellants' rights, and that, as such, the action was unrelated to the purpose of the Individuals with Disabilities Education Act. The complaint filed in the action alleged that, as a result of the [restraining device], Ronnie Lee S. sustained "great psychological and emotional stress, developmental delays, trauma, fears and pain and suffering." Specifically, the complaint alleged that, because of the use of that device, the appellees (1) violated Ronnie Lee S.'s rights to due process, to an education and to be free of excessive punishment; (2) committed assault and battery; (3) intentionally or recklessly inflicted severe emotional distress; and (4) discriminated against Ronnie Lee S. because of his disability. The complaint did not make reference to the Individuals with Disabilities Education Act. Certainly, while it may be argued that the portion of the complaint concerning the alleged violation of Ronnie Lee S.'s right to an education was precluded by the Act, the gravamen of the action clearly falls beyond the general admonition that the Act serves to assure children with disabilities a free appropriate public education which emphasizes special education and related services designed to meet their unique needs.

*Ronnie Lee S.*, 201 W.Va. at 674, 500 S.E.2d at 299 (internal quotation marks and citation omitted).

Our decision in *Ronnie Lee S.* is not applicable to the instant facts. Unlike in *Ronnie Lee S.*, all of the appellant's claims arise from the Board's alleged failure to provide the appellant with a free appropriate

treated as a motion for summary judgment inasmuch as the circuit court considered a matter outside the pleading which was the federal court's order dismissing the appellant's federal claims. We disagree. Although this issue has not been addressed by this Court, federal courts have found that a trial court can take notice of a prior case without having to convert the motion to dismiss into one for summary judgment. *See*

*e.g., Boateng v. InterAmerican Univ., Inc.,* 210 F.3d 56, 60 (1st Cir.2000) ("[A] court may look to matters of public record in deciding a Rule 12(b)(6) motion without converting the motion into one for summary judgment. And a court ordinarily may treat documents from prior state court adjudications as public records" (citations omitted)).

public education. Specifically, the appellant alleges that in his complaint below that the Board "discriminated against [him] under the [Human Rights Act] on the basis of disability by denying him a free, appropriate public education." The appellant also avers that the Board denied him his rights under W.Va. Code § 18–1–4 *et seq.* which "requires the Board to provide to students a free, public education and to prepare them to be gainfully employed and to insure that they are not functionally illiterate." Third, the appellant's negligence claim arises from the Board's alleged failure "to exercise that degree of care, skill and learning required or expected of a reasonable, prudent board of education, by deviating from the standards of care and/or carelessly and negligently failing to manage and educate Plaintiff." Finally, the appellant's claim for negligent infliction of emotional distress is based on the Board's negligent and careless infliction of "severe and emotional distress upon the plaintiff by holding him up to ridicule, by denying him the right to an education, and otherwise, all of which resulted in damage and injury to the Plaintiff." Thus, it is clear from the appellant's complaint that all of his claims arise from the failure to provide him with a free appropriate public education under Policy 2419. As such, the appellant cannot avoid the Policy's exhaustion requirements by pleading separate causes of action.

In sum, we find that the appellant and/or his parents failed to exhaust their administrative remedies under Policy 2419. We fur-ther find that the appellant has failed to meet the burden of proving an exception to the exhaustion requirement. Accordingly, the appellant is now precluded from bringing a claim against the Board for the alleged failure to provide him with a free appropriate public education. Finally, because the appellant is precluded from bringing a civil action in circuit court, it appears to this Court beyond doubt that the appellant's complaint will not support a claim that entitles the appellant to relief.

## IV.

## CONCLUSION

For the reasons set forth above, we now affirm the April 3, 2007, order of the Circuit Court of Kanawha County that dismissed the appellant's state law claims because the appellant failed to exhaust his administrative remedies.

Affirmed.

Justice ALBRIGHT not participating.

Senior Status Justice MCHUGH sitting by temporary assignment.