**FILED**
**June 2, 2021**
**released at 3:00 p.m.**
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

# IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

## January 2021 Term

_____

## No. 20-0532

_____

## CLAY R. HUPP,
**Plaintiff Below, Petitioner**

## V.

## RICHARD A. MONAHAN AND
## THE MASTERS LAW FIRM LC,
**Defendants Below, Respondents**

_____

**Appeal from the Circuit Court of Kanawha County**
**The Honorable Tod Kaufman, Judge**
**Civil Action No. 18-C-1265**

**AFFIRMED**

_____

**Submitted: March 16, 2021**
**Filed: June 2, 2021**

Richard A. Robb                          Richard A. Monahan
South Charleston, West Virginia          The Masters Law Firm lc
Attorney for the Petitioner              Charleston, West Virginia
                                         Self-Represented Litigant and
                                         Attorney for the Respondent,
                                         The Masters Law Firm lc

**CHIEF JUSTICE JENKINS delivered the Opinion of the Court.**

**SYLLABUS BY THE COURT**

1.      "A cause of action for legal malpractice accrues when the malpractice occurs, or when the client knows, or by reasonable diligence should know, of the malpractice."  Syllabus point 5, *VanSickle v. Kohout*, 215 W. Va. 433, 599 S.E.2d 856 (2004).

2.      "West Virginia adopts the continuous representation doctrine through which the statute of limitations in an attorney malpractice action is tolled until the professional relationship terminates with respect to the matter underlying the malpractice action."  Syllabus point 6, *Smith v. Stacy*, 198 W. Va. 498, 482 S.E.2d 115 (1996).

3.      "The limitations period for a legal malpractice claim is not tolled by the continuous representation rule where an attorney's subsequent role is only tangentially related to legal representation the attorney provided in the matter in which he was allegedly negligent."  Syllabus point 7, *Smith v. Stacy*, 198 W. Va. 498, 482 S.E.2d 115 (1996).

4.      "The continuous representation doctrine applies only to malpractice actions in which there [are] clear indicia of an ongoing, continuous, developing, and dependent relationship between the client and the attorney."  Syllabus point 8, *Smith v. Stacy*, 198 W. Va. 498, 482 S.E.2d 115 (1996).

5.      "The continuous representation doctrine should only be applied where the attorney's involvement after the alleged malpractice is for the performance of the same or related services and is not merely continuity of a general professional relationship." Syllabus point 9, *Smith v. Stacy*, 198 W. Va. 498, 482 S.E.2d 115 (1996).

**Jenkins, Chief Justice:**

Petitioner, Clay R. Hubb ("Mr. Hubb"), the plaintiff below, appeals an order entered by the Circuit Court of Kanawha County that granted a motion to dismiss Mr. Hubb's legal malpractice lawsuit, which motion was filed by the defendants below, the respondents, Richard A. Monahan ("Mr. Monahan") and The Masters Law Firm lc. ("Masters"). The circuit court granted dismissal based upon its conclusion that the applicable two-year statute of limitations on Mr. Hubb's claim had expired prior to the filing of his legal malpractice action. Mr. Hubb argues that the circuit court erred in failing to apply the continuous representation doctrine to find his complaint was timely filed. We have considered the briefs submitted on appeal, the appendix record, the parties' oral arguments, and the applicable legal authority. Because the circuit court considered matters outside the pleadings, we convert the dismissal to summary judgment; however, we find no error in the circuit court's conclusion that the continuous representation doctrine is not applicable to the facts presented in this case. Accordingly, the circuit court's order effectively granting summary judgment to Mr. Monahan and Masters (collectively "Lawyers") is affirmed.

## I.

### FACTUAL AND PROCEDURAL HISTORY

Mr. Hupp, who was formerly employed as a trooper for the West Virginia State Police, was granted duty-related, partial-disability benefits by the West Virginia

Consolidated Public Retirement Board ("WVCPRB") in 1999.[1] His partial disability resulted from hearing loss and was based, in part, upon an evaluation by Stephen J. Wetmore, M.D., a physician chosen by the WVCPRB. Dr. Wetmore concluded that Mr. Hupp was permanently disabled from performing the essential functions required of a state trooper due to a moderate to severe high frequency hearing loss. Mr. Hupp's disability was considered permanent. In addition, Mr. Hupp presented the WVCPRB with a report from his own treating physician, Robert W. Azar, M.D., and from audiologist George F. Evans, M.A. Audiologist CCCA, both of whom concurred that Mr. Hupp was permanently disabled from performing the essential duties of a state trooper as a result of his hearing loss.

Despite the earlier finding that Mr. Hupp suffered from a permanent hearing loss, the WVCPRB notified Mr. Hupp on July 2, 2010, that he was to undergo a recertification exam by a physician selected by the WVCPRB to verify that he remained disabled. Thereafter, he was examined on behalf of the WVCPRB by Marsha Lee Bailey, M.D. Dr. Bailey completed a recertification form based on her evaluation of Mr. Hupp and gave an affirmative answer to the following question: "[h]as the individual recovered

---

[1] According to a "RECOMMENDED DECISION" by a WVCPRB hearing officer, Mr. Hupp "had approximately twenty-two years of service credit in the State Police Death, Disability[,] and Retirement System" at the time he was granted partial-disability benefits. Thereafter, Mr. Hupp served as Sheriff of Tyler County from January 2001 through December 2008. He then worked part-time as a security guard for an unknown length of time.

from his or her previously determined probable permanent disability to the extent that he or she is able to perform adequately the essential duties of a law enforcement officer?" In addition, Dr. Bailey noted on the form that Mr. Hupp "was never disabled as a law enforcement officer." Mr. Hupp's partial-disability benefits were terminated based upon Dr. Bailey's report. Mr. Hupp elected to retire rather than return to active duty as a state trooper following the termination of his benefits; nevertheless, he appealed the termination because his partial-disability benefits were superior to his retirement benefits.

At the request of the West Virginia Troopers Association, Lawyers represented Mr. Hupp in his appeal.[2] Lawyers first filed an administrative appeal on behalf of Mr. Hupp, and, following a hearing on February 1, 2011, the hearing officer issued a recommended decision concluding that Mr. Hupp's appeal should be denied. The WVCPRB adopted the recommended decision by its final order dated May 26, 2011, and notified Mr. Monahan of the same. Lawyers continued their representation of Mr. Hupp and appealed the final administrative order to the Circuit Court of Tyler County. By order entered on June 22, 2013, the circuit court affirmed the decision of the WVCPRB. Finally,

_____

[2] Mr. Hupp explains in his appellate brief that Lawyers have characterized their representation as "'pro bono' apparently because their representation occurred due to some sort of relationship with the [West Virginia Troopers Association]." In their appellate brief, Lawyers state that, "[o]ur firm[,] for approximately 30 years, has been representing Troopers who are approved by the [West Virginia Troopers] Association on a pro bono basis." They further assert that Mr. Hupp "did not 'retain' [them] to represent him. No contingency fee contract or hourly contract existed between the parties. Rather, at the request of The West Virginia Troopers Association, [Lawyers] agreed to provide pro bono legal services to [Mr. Hupp] in order to assist him in handling his appeal."

the circuit court's decision was appealed to this Court, with Lawyers still serving as counsel for Mr. Hupp. This Court also affirmed the termination of Mr. Hupp's partial-disability benefits. *See Hupp v. W. Va. Consol. Pub. Ret. Bd.*, No. 13-0811, 2014 WL 2682677 (W. Va. June 13, 2014) (memorandum decision). Mr. Monahan forwarded a copy of this Court's memorandum decision to Mr. Hupp on June 16, 2014. By order entered on August 26, 2014, the Court refused Mr. Hupp's petition for rehearing, which had been filed on his behalf by Mr. Monahan. This Court's mandate issued on September 2, 2014.

Slightly more than a year later, by letter dated September 28, 2015, Mr. Hupp asked Mr. Monahan to "make reapplication to the [WVCPRB] on [his] behalf for a partial or full disability award." Mr. Monahan responded with a letter explaining to Mr. Hupp that Masters

> does not file applications or re-applications for partial or full disability awards for applicants. It would be your responsibility to file such application or reapplication.
>
> If the [WVCPRB] denies your reapplication and the West Virginia Troopers Association approves our firm representing you in any appeal, then we can assist in that regard . . . .

Thereafter, James C. Lee, in his capacity as President of the West Virginia Troopers Association, sent a letter to Masters dated December 22, 2015,[3] which stated, in relevant part: "[p]er a board meeting vote of the West Virginia Troopers Association on December 21, 2015, please be advised that the Board of Directors has voted to allow Clay Hupp to

---

[3] The letter was addressed to Marvin Masters.

4

come to talk with you about his issue. Please proceed as you need to." Thereafter Mr. Monahan and Mr. Hupp tried, unsuccessfully, to obtain medical evidence to demonstrate that Mr. Hupp's hearing had worsened in the time since Dr. Bailey's 2010 examination, which evidence was necessary to support Mr. Hupp's application for disability benefits.[4] Having failed to obtain medical evidence to adequately demonstrate a worsening of Mr. Hupp's hearing during the relevant timeframe, Lawyers advised Mr. Hupp in January 2018 that nothing more could be done to further his efforts to obtain a new award of disability benefits.[5]

On October 4, 2018, Mr. Hupp filed a complaint against Lawyers in the Circuit Court of Kanawha County alleging that they committed legal malpractice in connection with his appeal of the WVCPRB's termination of his partial-disability benefits by failing to obtain and/or submit medical evidence to refute Dr. Bailey's assessment that Mr. Hupp suffered no disability from hearing loss. Mr. Hupp contended that Lawyers' failure to obtain this evidence resulted in the WVCPRB's decision being affirmed at every level of appeal. Lawyers filed a motion to dismiss the complaint pursuant to Rule 12(b)(6) of the West Virginia Rules of Civil Procedure claiming the action was time-barred by the

---

[4] It appears that, due to the inability to obtain a medical opinion stating that Mr. Hupp's hearing loss had substantially worsened since his reevaluation in 2010, no application for a new disability award was ever filed by Lawyers on behalf of Mr. Hupp.

[5] Mr. Hupp's complaint asserts that in "January 2018 the defendants [Lawyers] informed Mr. Hupp there was nothing further they could do in his behalf terminating their representation of him in this matter."

5

applicable statute of limitations. They argued that the two-year statute of limitations for Mr. Hupp's malpractice claim began to run on September 3, 2014, immediately following this Court's issuance of the mandate that concluded Mr. Hupp's final appeal of the termination of his disability benefits. As such, Lawyers contend that the limitations period for Mr. Hupp's malpractice action expired on September 2, 2016, and his complaint, which was not filed until October 4, 2018, was untimely. Mr. Hupp resisted the motion and argued that Lawyers' representation was continuous until January 2018, when they advised him that they could do nothing more in relation to his efforts to obtain a new award of disability benefits. Calculating the statute of limitations from January 2018, Mr. Hupp argued that his complaint was timely filed.

The circuit court granted Lawyers' motion to dismiss, finding that Mr. Hupp "neither has nor can show a clear indicia [sic] of an ongoing, continuous relationship between the parties" after the conclusion of his appeal of the termination of his disability benefits. The circuit court further concluded that any further relationship between the parties, *i.e.*, Lawyers' assistance in attempting to gather information to file a new application for disability benefits, was only tangentially related to their earlier, allegedly negligent, representation of Mr. Hupp. This appeal followed.

## II.

## STANDARD OF REVIEW

Mr. Hupp appeals from the circuit court's order dismissing his complaint for failing to state a claim upon which relief can be granted. Generally, "[o]nly matters contained in the pleading can be considered on a motion to dismiss under Rule 12(b) R.C.P., and if matters outside the pleading are presented to the court and are not excluded by it, the motion should be treated as one for summary judgment . . . ." Syl. pt. 3, in part, *Riffle v. C.J. Hughes Constr. Co.*, 226 W. Va. 581, 703 S.E.2d 552 (2010) (quotations and citations omitted). We observe that Lawyers attached sixteen exhibits to their motion to dismiss. Some of these exhibits fall within exceptions to the general rule prohibiting consideration of matters outside the pleading, such as records from related proceedings. *See, e.g.*, *Forshey v. Jackson*, 222 W. Va. 743, 747, 671 S.E.2d 748, 752 (2008) ("Rule 12(b)(6) permits courts to consider matters that are susceptible to judicial notice." (quotations and citation omitted)); *Sturm v. Bd. of Educ. of Kanawha Cty.*, 223 W. Va. 277, 284 n.9, 672 S.E.2d 606, 613 n.9 (2008) (observing that "a trial court can take notice of a prior case without having to convert the motion to dismiss into one for summary judgment"). However, other exhibits attached to Lawyers' motion to dismiss, such as letters between the parties that were neither referenced in nor integral to allegations in the complaint, are not subject to an exception to the general rule. *See* Syl. pt. 6, *Mountaineer Fire & Rescue Equip., LLC v. City Nat'l Bank of W. Va.*, ___ W. Va.___, 854 S.E.2d 870 (2020) ("When a movant makes a motion to dismiss a pleading pursuant to Rule 12(b)(6) of the West Virginia Rules of Civil Procedure, and attaches to the motion a document that

7

is outside of the pleading, a court may consider the document only if (1) the pleading implicitly or explicitly refers to the document; (2) the document is integral to the pleading's allegations; and (3) no party questions the authenticity of the document. If a document does not meet these requirements, the circuit court must either expressly disregard the document or treat the motion as one for summary judgment as required by Rule 12(b)(7)."). The circuit court's order quoted from these letters and clearly considered them in ruling on Lawyers' motion to dismiss.[6] Accordingly, we treat this case as having been decided on a motion for summary judgment. *See Harrison v. Davis*, 197 W. Va. 651, 657 n.16, 478 S.E.2d 104, 110 n.16 (1996) ("[I]f a circuit court considers matters outside the pleadings in connection with a motion to dismiss, we must treat the motion as one for summary judgment.").

It is well settled that "[a] circuit court's entry of summary judgment is reviewed *de novo*." Syl. pt. 1, *Painter v. Peavy*, 192 W. Va. 189, 451 S.E.2d 755 (1994). In conducting our plenary review, we are cognizant that "[a] motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." Syl. pt.

---

[6] Mr. Hupp does not assign error to the circuit court's consideration of matters outside the pleadings; therefore, he has waived any such argument. *See Tiernan v. Charleston Area Med. Ctr., Inc.*, 203 W. Va. 135, 140 n.10, 506 S.E.2d 578, 583 n.10 (1998) ("Issues not raised on appeal or merely mentioned in passing are deemed waived."); Syl. pt. 6, *Addair v. Bryant*, 168 W. Va. 306, 284 S.E.2d 374 (1981) ("Assignments of error that are not argued in the briefs on appeal may be deemed by this Court to be waived.").

3, *Aetna Cas. & Sur. Co. v. Fed. Ins. Co. of New York*, 148 W. Va. 160, 133 S.E.2d 770 (1963). Stated another way,

> [s]ummary judgment is appropriate if, from the totality of the evidence presented, the record could not lead a rational trier of fact to find for the nonmoving party, such as where the nonmoving party has failed to make a sufficient showing on an essential element of the case that it has the burden to prove.

Syl. pt. 2, *Williams v. Precision Coil, Inc.*, 194 W. Va. 52, 459 S.E.2d 329 (1995). We will apply these summary judgment standards to our consideration of the issue raised on appeal.

## III.

## DISCUSSION

In this appeal, we are asked to determine whether Lawyers' representation of Mr. Hupp for the purpose of filing an application seeking a new award of disability benefits based on an alleged worsening of his hearing loss (sometimes referred to as "application representation") was a continuation of Lawyers' earlier representation of Mr. Hupp in connection with his unsuccessful appeal of the WVCPRB's termination of his prior award of partial-disability benefits for hearing loss (sometimes referred to as "appellate representation") such that the continuous representation doctrine applies to toll the statute of limitations on Mr. Hupp's claim that Lawyers committed malpractice during their appellate representation.

9

Mr. Hupp does not dispute that his malpractice action sounds in tort and, therefore, is subject to a two-year statute of limitations.[7] Rather, the question raised in this appeal concerns when the limitations period began to run. In general, "[a] cause of action for legal malpractice accrues when the malpractice occurs, or when the client knows, or by reasonable diligence should know, of the malpractice." Syl. pt. 5, *VanSickle v. Kohout*, 215 W. Va. 433, 599 S.E.2d 856 (2004). In this case, Mr. Hupp seeks to utilize an exception to the general application of the statute of limitations, the continuous representation doctrine, which was embraced by this Court in 1996: "West Virginia adopts the continuous representation doctrine through which the statute of limitations in an attorney malpractice action is tolled until the professional relationship terminates with respect to the matter underlying the malpractice action." Syl. pt. 6, *Smith v. Stacy*, 198 W. Va. 498, 482 S.E.2d 115 (1996).

Because the continuous representation doctrine is an exception to the statute of limitations, in deciding this matter we are mindful that statutes of limitation are favored, and exceptions thereto should be strictly construed:

> "[T]he object of statutes of limitations is to compel the bringing of an action within a reasonable time." [*Johnson v. Nedeff*,] 192 W. Va. [260,] 266, 452 S.E.2d [63,] 69 [(1994)].

---

[7] *See* W. Va. Code § 55-2-12 (eff. 1959) ("Every personal action for which no limitation is otherwise prescribed shall be brought: . . . (b) within two years next after the right to bring the same shall have accrued if it be for damages for personal injuries[.]"); *Harrison v. Casto*, 165 W. Va. 787, 790, 271 S.E.2d 774, 776 (1980) (recognizing that a legal malpractice action may sound in tort or in contract, and further observing that "[t]he limitation of time within which a tort action for personal injuries can be brought under *W. Va. Code*, 1931, 55-2-12, as amended, is two years.").

In this manner, we [have] noted that "'statutes of limitations are favored in the law and cannot be avoided unless the party seeking to do so brings himself strictly within some exception. It has been widely held that such exceptions "are strictly construed and are not enlarged by the courts upon considerations of apparent hardship." (*Woodruff v. Shores*, 354 Mo. 742, [746,] 190 S.W.2d 994, [996,] 166 A.L.R. 957[, 960 (1945)].)[.]'" 192 W. Va. at 263, 452 S.E.2d at 66 (quoting *Humble Oil & Ref. Co. v. Lane*, 152 W. Va. 578, 583, 165 S.E.2d 379, 383 (1969)). Finding that the plaintiff had failed to satisfy the requirements of any established exceptions to the statute of limitations, we further stated [in *Johnson*] that "'[d]efendants have a right to rely on the certainty the statute [of limitations] provides, . . . .'" 192 W. Va. at 265, 452 S.E.2d at 68 (quoting *Kelly v. Mazzie*, 207 Ill. App. 3d 251, 254, 152 Ill. Dec. 186, 188, 565 N.E.2d 719, 721 (1990)). Lastly, we concluded that "[b]y strictly enforcing statutes of limitations, we are both recognizing and adhering to the legislative intent underlying such provisions." 192 W. Va. at 265, 452 S.E.2d at 68.

*Perdue v. Hess*, 199 W. Va. 299, 303, 484 S.E.2d 182, 186 (1997). Thus, in adopting the continuous representation doctrine, the *Stacy* Court clarified that "[t]he limitations period for a legal malpractice claim is not tolled by the continuous representation rule where an attorney's subsequent role is only tangentially related to legal representation the attorney provided in the matter in which he was allegedly negligent." Syl. pt. 7, *Stacy*, 198 W. Va. 498, 482 S.E.2d 115. Rather, "[t]he continuous representation doctrine applies only to malpractice actions in which there [are] clear indicia of an ongoing, continuous, developing, and dependent relationship between the client and the attorney." Syl. pt. 8, *id*. Accordingly, "[t]he continuous representation doctrine should only be applied where the attorney's involvement after the alleged malpractice is for the performance of the same or related services and is not merely continuity of a general professional relationship." Syl.

11

pt. 9, *id*.  The *Stacy* Court further imposed "the burden of establishing the elements necessary for the application of the doctrine . . . upon the client."  *Id*. at 507, 482 S.E.2d at 124.

In declining to apply the continuous representation doctrine in this case, the circuit court reasoned that

> [a]bsolutely nothing further could be done to remedy or cure the termination of [Mr. Hupp's] prior partial-disability benefits based upon the recertification exam after the conclusion of all judicial appeals available on such matter.  Any further relationship between the parties was ***"only tangentially related to legal representation [Lawyers'] provided in the matter in which [they were] allegedly negligent."***  Syl. Pt. 7, *Smith v. Stacy*, *supra* (emphasis added).

The circuit court then concluded that Mr. Hupp's request

> for new representation did not involve the continuous representation of [Mr. Hupp] for the matter underlying his claim of malpractice, i.e., the handling of his appeal of the termination of his prior partial-disability benefits.  And had [Lawyers] been continually representing [Mr. Hupp], there would have been no need for [Mr. Hupp,] over a year later[,] to send the letter requesting that [Lawyers] apply for new benefits on his behalf due to a worsening of his hearing.

Mr. Hupp contends that the circuit court erred by failing to apply the continuous representation doctrine to toll the limitations period applicable to his claim of malpractice related to Lawyers' appellate representation.  In support of this argument, Mr. Hupp claims that Lawyers' assistance in his attempt to prepare an application seeking a new award of disability benefits was a continuation of their prior appellate representation,

12

as demonstrated by the fact that both efforts shared the common goal of obtaining disability benefits for Mr. Hupp's hearing loss.

In response, Lawyers argue that Mr. Hupp neither has nor could show a clear indicium of an ongoing, continuous relationship between the parties after the conclusion of the appellate representation. They reiterate the circuit court's conclusion that, at the end of all judicial appeals available in relation to the termination of his partial-disability benefits, which culminated with this Court's mandate entered on September 2, 2014, nothing further could be done to remedy or cure the termination. Lawyers claim that any further relationship between the parties was "only tangentially related to legal representation [they] provided in the matter in which [they were] allegedly negligent." Syl. pt. 7, in part, *Stacy*, 198 W. Va. 498, 482 S.E.2d 115.

Discussing the rationale for the continuing representation doctrine, this Court has recognized that "[t]he doctrine is grounded in notions of protecting the integrity of the professional relationship while it is ongoing as well as protecting the client from the barring of his or her cause of action by delay while an allegedly negligent lawyer attempts to repair or recover from any error." *Starcher v. Pappas*, No. 16-1160, 2017 WL 5157366, at *5 (W. Va. Nov. 7, 2017) (memorandum decision) (concluding that continuous representation doctrine did not apply where there was no attorney-client relationship). In this vein, it has been explained that

13

[t]he summary purpose of the continuous representation rule is to avoid disrupting the attorney-client relationship unnecessarily. Adoption of the rule was a direct reaction to the illogical requirement of the occurrence rule, which compels clients to sue their attorneys though the relationship continues, and there has not been and may never be any injury. The continuous representation rule is consistent with the purpose of the statute of limitations, which is to prevent stale claims and enable the defendant to preserve evidence. When the attorney continues to represent the client in the subject matter in which the error has occurred, all such objectives are achieved and preserved. The attorney-client relationship is maintained and speculative malpractice litigation is avoided.

. . . .

The continuous representation rule is available and appropriate in those jurisdictions adopting the damage and discovery rules. The policy reasons are as compelling for allowing an attorney to continue efforts to remedy a bad result, even if some damages have occurred and even if the client is fully aware of the attorney's error. The doctrine is fair to all concerned parties. The attorney has the opportunity to remedy, avoid or establish that there was no error or attempt to mitigate the damages. The client is not forced to end the relationship, though the option exists. This result is consistent with all expressed policy basis for the statute of limitations.

Ronald E. Mallen & Jeffrey M. Smith, *Legal Malpractice* § 22.13, at 430-31 (5th ed. 2000)

(footnotes omitted). *Accord Stacy*, 198 W. Va. at 505, 482 S.E.2d at 122.

Examining the facts of the instant matter, and bearing in mind that exceptions

to statutes of limitations are to be strictly construed,[8] we find no error in the circuit court's

---

[8] *See Perdue v. Hess*, 199 W. Va. 299, 303, 484 S.E.2d 182, 186 (1997) ("It has been widely held that . . . exceptions [to statutes of limitations] are strictly construed and are not enlarged by the courts upon considerations of apparent hardship." (quotations and citations omitted)).

conclusion that the continuous representation doctrine has no application in this case. *See* Mallen & Smith, *supra* § 22.13, at 443 ("There is no bright-line rule for determining when representation ended, because the particular circumstances need to be evaluated."). Mr. Hupp's malpractice claim is based on Lawyers' purported failure during their appellate representation to obtain evidence to rebut Dr. Bailey's findings, which findings resulted in the WVCPRB terminating Mr. Hupp's prior partial-disability award. Once all appeals of the WVCPRB's termination of Mr. Hupp's partial-disability award were exhausted, and this Court denied his petition for rehearing and issued its mandate, the case was finally concluded. *See id* § 22.13, at 439 ("The determinative event for the 'continuous representation' rule is when the representation ended."). At that point, any alleged malpractice by Lawyers in connection with their appellate representation of Mr. Hupp was no longer correctable, and the primary purposes of the continuous representation doctrine, *i.e.*, to avoid disrupting the attorney-client relationship, to avoid requiring a malpractice suit be filed when the potential injury remains speculative, and to allow the lawyer an opportunity to mitigate damages, were no longer concerns with respect to Lawyers' appellate representation of Mr. Hupp.

When Mr. Hupp contacted Lawyers by letter approximately a year after his appeal had concluded, he asked them to "make reapplication to the Board [WVCPRB] on [his] behalf for a partial or full disability award." This clearly was a request for new representation for the purpose of seeking a new disability award that would be based on a worsening of Mr. Hupp's hearing loss. The fact that Mr. Hupp's request for "reapplication"

15

was considered by Lawyers to be a separate matter is reflected in their response to the request. By letter dated October 13, 2015, Lawyers initially declined to represent Mr. Hupp in this matter and advised him that "[o]ur firm does not file applications or re-applications for partial or full disability awards for applicants." Thus, rather than being a continuation of their former appellate representation of Mr. Hupp, his request that Lawyers file on his behalf an application for disability benefits was a distinct matter of a type that Lawyers typically did not engage. *See Dunn v. Rockwell*, 225 W. Va. 43, 60, 689 S.E.2d 255, 272 (2009) ("The continuous representation doctrine requires something more than a lawyer-client relationship. The doctrine requires a showing that the lawyer's representation of the client relates to the same transaction or subject matter as the allegedly negligent acts."); Mallen & Smith, *supra* § 22.13, at 439-40 ("The inquiry is not whether an attorney-client relationship still exists on any matter or even generally, but when the representation of the *specific subject matter* concluded. Continuity of the representation is a requirement." (footnote omitted)).

Lawyers' letter of October 13 additionally belies Mr. Hupp's theory that Lawyers' application representation was an effort to mitigate the alleged malpractice committed in their appellate representation. *See Stacy*, 198 W. Va. at 503, 482 S.E.2d at 120 (explaining that the continuous representation doctrine "is designed, in part, to protect the integrity of the professional relationship by permitting the allegedly negligent attorney to attempt to remedy the effects of the malpractice and providing uninterrupted service to the client"). Assuming, for the sake of argument, that obtaining a new disability award for

16

Mr. Hupp was an appropriate method of mitigating their alleged malpractice in Mr. Hupp's earlier appeal, Lawyers would not have initially declined the representation if mitigation had been its purpose.

The evidence presented in this case establishes, without question, that there was no continuing representation of Mr. Hupp by Lawyers. Instead, Lawyers represented Mr. Hupp in two individual matters. First, they sought, unsuccessfully, to overturn the WVCPRB's termination of partial-disability benefits that Mr. Hupp had begun receiving in 1999, by appealing the WVCPRB's action at the administrative level, in the circuit court, and, finally, in this Court. More than a year later, and after initially declining to do so, Lawyers, in a second representation, sought to assist Mr. Hupp to obtain a new disability award based upon an ostensible worsening of his pre-existing hearing loss. On this evidence, we find Mr. Hupp has failed to raise a genuine question of fact to overcome summary judgment, and we affirm the circuit court's order ruling that Mr. Hupp's complaint, which was filed more than two years after Lawyers' appellate representation had concluded, was time-barred.

## IV.
## CONCLUSION

For the reasons explained in the body of this opinion, the order of the Circuit Court of Kanawha County entered on June 23, 2020, effectively granting summary judgment to Lawyers, is affirmed.

Affirmed.

18