# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

Fall 2024 Term

_____

No. 24-ICA-39

_____

FILED

**November 13, 2024**

released at 3:00 p.m.
ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

DEBORAH BEHELER BALDWIN,
Claimant Below, Petitioner

v.

SCOTT A. ADKINS, in his official capacity as Acting Commissioner of WORKFORCE WEST VIRGINIA, AND WORKFORCE WEST VIRGINIA BOARD OF REVIEW,

Respondents.

_____

Appeal from the WorkForce West Virginia Board of Review

Case No. R-2023-1780 (R-2-J)

VACATED AND REMANDED

_____

Submitted: October 29, 2024
Filed: November 13, 2024

D. Christopher Hedges, Esq.
L. Dante diTrapano, Esq.
David H. Carriger, Esq.
Calwell Luce diTrapano, PLLC
Charleston, West Virginia
Counsel for Petitioner

Patrick Salango, Esq.
Preston & Salango, PLLC
Charleston, West Virginia
Counsel for Petitioner

Roberta F. Green, Esq.
Caleb B. David, Esq.
Shuman McCuskey Slicer, PLLC
Charleston, West Virginia
Counsel for Respondents

Ben Salango, Esq.
Salango Law, PLLC
Charleston, West Virginia
Counsel for Petitioner

JUDGE CHARLES O. LORENSEN delivered the Opinion of the Court.
JUDGE DANIEL W. GREEAR, voluntarily recused.
JUDGE ROBERT E. RICHARDSON, sitting by temporary assignment.

LORENSEN, JUDGE:

Petitioner, Deborah Beheler Baldwin, appeals the WorkForce West Virginia Board of Review's ("Board") decision dated December 12, 2023, reversing in part and affirming in part an administrative law judge's ("ALJ") decision which found that Ms. Baldwin was overpaid three weeks of unemployment compensation benefits in the Spring of 2021, but that WorkForce West Virginia ("WorkForce") was time barred from collecting the overpayments. On appeal, the Board agreed that Ms. Baldwin was overpaid three weeks of benefits. However, it determined that the ALJ applied the wrong collection limit period for the first two weeks of overpayments, and that WorkForce could pursue collection of the overpayment for those two weeks. The Board remanded the case for a calculation of the overpaid benefits.

After careful review of the briefs, the appendix record, the arguments of the parties, and the applicable legal authority, we find that the Board failed to give Ms. Baldwin proper notice and an opportunity to be heard regarding the Board's determination that Ms. Baldwin failed to disclose her weekly earnings on the online portal application form, and that the administrative record contains insufficient evidence to conclude that the benefit overpayments were made by reason of error, nondisclosure, or misrepresentation. We therefore vacate the Board's December 12, 2023, order and remand this case to the Board with instructions that it fully develop an evidentiary record based on the parties' claims and defenses.

1

# I.    FACTUAL AND PROCEDURAL BACKGROUND

In April of 2020, Ms. Baldwin was employed by Alliance Healthcare Services, Inc. ("Alliance"). Due to COVID-19 pandemic restrictions, Ms. Baldwin's employment was reduced from full-time to part-time. As a result, on April 5, 2020, Ms. Baldwin filed a claim for unemployment compensation benefits on the WorkForce online portal. Ms. Baldwin's online submission states that she remained employed by Alliance, and that she was filing for unemployment compensation benefits due to a "reduction in full-time hours available."

On April 17, 2020, Ms. Baldwin filed a weekly application for unemployment compensation benefits for the week ending on April 11, 2020. Ms. Baldwin's online portal application indicates she was not working, and that she did not receive wages that week. She filed a similar application on April 27, 2020, for the week ending on April 18, 2020. Ms. Baldwin again indicated on the online portal form that she did not work or receive wages that week. On May 11, 2020, Ms. Baldwin filed a third application for unemployment compensation benefits for the week ending on May 9, 2020. According to the May 11, 2020, online portal application, she received $451.20 in earnings for twenty-four hours of work during the week. Ms. Baldwin does not dispute that she was paid unemployment compensation benefits for those three weeks.

On December 18, 2020, Alliance completed a "Claims Audit Form" at the request of WorkForce. On the audit form, Alliance reported that for the week ending on April 11, 2020, Ms. Baldwin worked 34.66 hours and received $745.61 in gross wages; that for the week ending on April 18, 2020, Ms. Baldwin worked 29.16 hours and received $547.38 in gross wages; and that for the week ending on May 9, 2020, Ms. Baldwin worked 24.36 hours and received $457.97 in gross wages. Based on the discrepancy between Ms. Baldwin's application for unemployment compensation benefits and the wages reported by Alliance, WorkForce determined Ms. Baldwin was overpaid unemployment compensation benefits.

On August 9, 2023, WorkForce notified Ms. Baldwin of her obligation to repay the overpaid benefits. According to the notice, WorkForce determined that Ms. Baldwin was overpaid $2,054.00 for the weeks ending on April 11, 2020, April 18, 2020, and May 9, 2020. Ms. Baldwin appealed the overpayment determination. In her appeal letter, Ms. Baldwin stated that her application was based on reduced earnings capacity during the COVID-19 pandemic outbreak, and that she remained employed on a part-time basis during the pay periods in question. Ms. Baldwin contended that she used WorkForce's online portal as instructed and attempted to further contact WorkForce multiple times to assist her or to confirm she was filing the correct claim application and when she noticed the amounts allotted on her benefit card. Ms. Baldwin alleged her calls were never returned, and that any mistake was on the part of WorkForce. Ms. Baldwin's

appeal letter also notes that on March 29, 2021, West Virginia Governor Jim Justice issued Executive Order 11-21, which, Ms. Baldwin asserts, prohibits WorkForce from pursuing Pandemic Unemployment Assistance benefit overpayments that were obtained without fault on the part of the recipient.

A scheduled hearing was held before the ALJ on September 26, 2023. Ms. Baldwin appeared unrepresented. WorkForce appeared in person through a manager, Amber Harper. Alliance made no appearance. Ms. Harper testified that Alliance disputed Ms. Baldwin's statements on her unemployment compensation benefit applications through the online portal that she was not working or receiving wages for the weeks ending on April 11, 2020, and April 18, 2020, and that Ms. Baldwin actually received $651.51 in gross wages for the week ending on April 11, 2020,[1] and $547.38 in gross wages for the week ending on April 18, 2020. Ms. Harper testified there was a small discrepancy for the week ending May 9, 2020; Alliance reported $457.97 in gross wages while Ms. Baldwin reported $451.20. When asked by the ALJ about how WorkForce viewed Ms. Baldwin's case, Ms. Harper responded that WorkForce considered it a non-fraudulent application, but

---

[1] WorkForce alleges Ms. Baldwin's wages for the week ending on April 11, 2020, were $651.51. However, Alliance reported $745.61 in gross wages. The record does not contain an explanation for the wage discrepancy between Alliance's audit report and WorkForce's findings. For the purposes of this opinion, we accept the Board's finding of $651.61 as Ms. Baldwin's gross wages for the week ending April 11, 2020.

4

she did not address Ms. Baldwin's letter asserting difficulty with the online portal in making her claim for benefits for underemployment.

Ms. Baldwin gave testimony and admitted that she received wages for the weeks ending on April 11, 2020, and April 18, 2020. However, Ms. Baldwin stated that it was her belief that she was collecting Pandemic Unemployment Assistance benefits for reduced earnings, and that she was not at fault for any benefit overpayment. Ms. Baldwin further testified that she was not familiar with the process for obtaining unemployment compensation benefits, and she argued that West Virginia Executive Order 11-21 prohibits WorkForce from collecting overpayments not based on fraud. The ALJ read the Executive Order into the hearing record, and he also stated that there was confusion among the ALJs whether to apply a two- or five-year statute of limitations in cases like Ms. Baldwin's.

On October 11, 2023, the ALJ issued a decision. The ALJ noted that WorkForce alleged an aggregate overpayment of $2,054.00 of benefits for the weeks ending on April 11, 2020, April 18, 2020, and May 9, 2020.[2] The ALJ stated that even though Ms. Baldwin believes she was not at fault for the wage discrepancies, WorkForce proved that an overpayment occurred. Nevertheless, the ALJ determined that Ms. Baldwin

_____

[2] The ALJ noted there was only a small discrepancy for the week ending May 9, 2020.

5

underreported her wages by mistake, and that the two-year statute of limitations provided in West Virginia Code § 21A-10-21 (1989) barred WorkForce from collecting Ms. Baldwin's overpayment. A reference titled "Date Mailed" appears on the third page of ALJ's decision, indicating it was mailed on October 13, 2023.

WorkForce appealed the ALJ's October 11, 2023, decision.[3] In its written comments to the Board dated December 5, 2023,[4] WorkForce argued that the ALJ should not have applied the two-year statute of limitations from West Virginia Code § 21A-10-21 for application errors. WorkForce argued that the five-year statute of limitations found in West Virginia Code § 21A-10-8 (1990) for overpayments based on nondisclosure or misrepresentation applies to Ms. Baldwin's case, and that it should be allowed to proceed with collecting the overpayment. Ms. Baldwin also submitted written arguments by legal counsel to the Board on December 5, 2023. Ms. Baldwin argued that the ALJ was correct when he applied the two-year statute of limitations found in West Virginia Code § 21A-10-21, and that his October 11, 2023, decision should be affirmed. Ms. Baldwin's counsel requested that the Board direct all future contacts regarding the claim to his office.

---

[3] By correspondence dated November 15, 2023, the Board notified the parties that it was scheduled to meet regarding Ms. Baldwin's case on December 7, 2023. The notice also stated that a decision would be made on the existing record, and that written comments must be received no later than two days before the Board's meeting.

[4] At oral argument, Ms. Baldwin's counsel stated that WorkForce's submission to the Board was mailed to Ms. Baldwin's counsel but not received by counsel until after the Board's decision was rendered.

The Board issued a decision dated December 12, 2023, reversing in part and affirming in part the decision of the ALJ. The Board determined that for the weeks ending on April 11, 2020, and April 18, 2020, Ms. Baldwin failed to disclose accurate wage information and that the five-year statute of limitations in West Virginia Code § 21A-10-8 applied. The Board rejected the ALJ's application of the two-year statute of limitations for the weeks ending on April 11, 2020, and April 18, 2020, but stated that it considered Ms. Baldwin's case a non-fraudulent application. The Board concluded that, for the week ending on May 9, 2020, the small discrepancy between reported and audited earnings was based on an error or mistake and not from nondisclosure. Therefore, the two-year statute of limitations from West Virginia Code § 21A-10-21 applied, and WorkForce was barred from collecting any benefit overpayment for the week ending on May 9, 2020.

Incorporated into the Board's decision is a form detailing a party's appeal rights. Under the heading "When to File" the form states, "[t]he Notice of Appeal must be filed with the Intermediate Court of Appeals within THIRTY DAYS after the mailing date listed on this notice."[5] The third page of the Board's decision has a space titled "Date Mailed," but the Board failed to insert a date corresponding to the "Date Mailed" section. However, the envelope mailed to Ms. Baldwin shows a postage meter date of December

---

[5] The Board's appeal instructions contain contradictory language near the bottom of the page. After the heading, "What Happens after an Appeal is Filed with the ICA," the Board refers to the West Virginia Rules of Appellate Procedure and states, "[t]he Notice of Appeal is due within thirty days of the entry of the board of review's final order." The Board's decision was issued on December 12, 2023.

7

26, 2023.  The Board mailed Ms. Baldwin a copy of its decision, but the Board did not mail a copy to her attorney of record.  Ms. Baldwin filed her Notice of Appeal in this Court on January 26, 2024, thirty-one days after the postage meter date shown on the envelope.

## II. STANDARD OF REVIEW

"The findings of fact of the Board of Review of [WorkForce West Virginia] are entitled to substantial deference unless a reviewing court believes the findings are clearly wrong. If the question on review is one purely of law, no deference is given and the standard of judicial review by the court is *de novo*." Syl. Pt. 3, *Adkins v. Gatson*, 192 W. Va. 561, 453 S.E.2d 395 (1994).

## III. DISCUSSION

Ms. Baldwin lists three assignments of error:  1) the Board erred when it found that Ms. Baldwin failed to disclose her wages for the weeks ending on April 11, 2020, and April 18, 2020, because actions under West Virginia Code § 21A-10-8 are only permitted in West Virginia trial courts, and the Board has no jurisdiction in cases alleging nondisclosure or misrepresentation; 2) the Board erred when it found that Ms. Baldwin failed to disclose her wages, and that the five-year statute of limitations in West Virginia Code § 21A-10-8 applied to this case; and 3) the Board erred when it failed to give Ms. Baldwin notice and an opportunity to be heard on the Board's consideration of West

8

Virginia Code § 21A-10-8, which was raised for the first time on appeal. We first address

the jurisdictional issues implicated in this case.

**A. Timely Appeal**

WorkForce argues that this Court does not have jurisdiction to consider Ms.

Baldwin's case because she untimely filed her appeal.  West Virginia Code § 21A-7-17

(1967) requires that appeals from the Board be made within thirty days of mailing:

> The decision of the board shall be final and benefits shall be
> paid or denied in accordance therewith, unless a claimant, last
> employer, or other interested party appeals to the circuit court
> of Kanawha county within thirty days after mailing of
> notification of the board's decision….[6]

Ms. Baldwin concedes that her notice of appeal was filed with the Intermediate Court of

Appeals on January 26, 2024, which—if December 26, 2023, were the operative date to

compute the appeal deadline—would be one day late.  Ms. Baldwin argues that she had

good cause for filing out of time because the Board failed to send a copy of its decision to

---

[6] In 2021, the Legislature enacted the West Virginia Appellate Reorganization Act of 2021, which created this Court, effective on July 1, 2022.  West Virginia Code § 51-11-3. In West Virginia Code § 51-11-4(b)(4), the Legislature granted this Court "appellate jurisdiction over…[f]inal judgments, orders, or decisions of an agency or an administrative law judge entered after June 30, 2022, heretofore appealable to the Circuit Court of Kanawha County pursuant to § 29A-5-4 or any other provision of this code."  Since July 1, 2022, all appeals from Board decisions must be filed with this Court.  In 2024, West Virginia Code § 21A-7-17 was amended for consistency with the jurisdictional directive in West Virginia Code § 51-11-4(b)(4).

her attorney, despite knowing Ms. Baldwin was represented and her attorney's instruction that the Board direct all future contacts regarding the claim to his office. Ms. Baldwin also emphasizes the Board's failure to insert the mailing date in its decision.

The Board's December 12, 2023, decision contains a space on the third page titled "Date Mailed," after which the Board should insert the date of mailing.[7] The Board's decision also provides claimants with instructions detailing how to appeal its decisions. At the top of the appeal instructions is a heading titled, "When to File," which informs claimants of the thirty-day appeal period. The instructions state that a "Notice of Appeal must be filed with the Intermediate Court of Appeals within THIRTY DAYS after the mailing date listed on this notice." (emphasis in the original). For Ms. Baldwin's decision, the Board failed to insert a date after the "Date Mailed" reference. The envelope postage meter date is December 26, 2023, but the "mailing date listed on [the] notice," as referenced in the appeal instructions, is left blank.[8]

---

[7] The ALJ's October 11, 2023, decision contains same "Date Mailed" reference line which was not left blank, but instead states that the decision was mailed on October 13, 2023.

[8] Adding to the potential for confusion, we note that Board's decision notice has an inconsistent and incorrect direction to a claimant concerning the due date for a notice of appeal to this Court, stating the notice is due "within thirty days of the entry of the [Board's] final order."

West Virginia Code § 21A-7-17 requires an appeal be made within thirty days after the mailing of a Board decision. Implicit in this statutory requirement is that claimants be adequately informed of a decision's mailing date. In Ms. Baldwin's case, we cannot say that the Board adequately informed her of the date its decision was mailed. The Board's instructions specifically state that the mailing date would be listed on the decision notice, but the Board failed to provide a date.

Ms. Baldwin also argues that the Board failed to send a copy of its December 12, 2023, decision to the proper address. Ms. Baldwin notes that her attorney informed the Board of his representation on December 5, 2023, and directed that all future contacts be made to his office. WorkForce counters that the Board was not required to send a copy of its decision to Ms. Baldwin's attorney because the Board is only required to notify claimants of its decisions.

West Virginia Code § 21A-7-15 (1949) states that the "[B]oard shall…notify the claimant…of its findings and decision on an appeal." The record shows that on December 5, 2023, Ms. Baldwin's attorney notified the Board of his representation and directed the Board to contact him regarding matters concerning Ms. Baldwin's case. At that point, the Board was on notice to send its decision to Ms. Baldwin's attorney. It is undisputed that the Board sent a copy to Ms. Baldwin. However, for the purposes of notice

11

pursuant to West Virginia Code § 21A-7-15, the Board was required to send the decision to Ms. Baldwin's attorney.

To summarize, the Board failed to adequately inform Ms. Baldwin of the date its decision was mailed, and the Board did not send a copy of the decision to her attorney. These procedural irregularities lead us to conclude that the thirty-day appeal limitation in West Virginia Code § 21A-7-17 is inapplicable to Ms. Baldwin's appeal. There is precedent for our finding. In *Mizell v. Rutledge*, 174 W. Va. 639, 328 S.E.2d 514 (1985), the Supreme Court of Appeals of West Virginia ("SCAWV") reversed Board decisions which found that several claimants were disqualified from extended unemployment compensation benefits. According to *Mizell*, the claimants previously "failed to appeal the deputies' decisions within the prescribed statutory period." *Id.* at 641, 328 S.E.2d at 516. Nevertheless, the SCAWV determined that because the claimants were not informed that they were disqualified for future benefits, the ALJ decisions did not meet "the notice requirements of West Virginia W.Va. Code § 21A-7-8 (1978), which…entitles the claimant…'to a fair hearing and reasonable opportunity to be heard before an appeal tribunal….'" *Mizell*, 174 W. Va. at 643, 328 S.E.2d at 518, Syl. Pt 2.

Similar to *Mizell*, the Board failed to provide adequate notice to Ms. Baldwin. The Board did not provide a mailing date in the designated area of the decision, and it did not mail a copy of the decision to Ms. Baldwin's designated address, which in this case

12

was the office of her attorney. We therefore hold that the thirty-day appeal limitation found in West Virginia Code § 21A-7-17 is inapplicable to Ms. Baldwin's appeal. Further, we find that Ms. Baldwin perfected her appeal within the time frames outlined in West Virginia Rule of Appellate Procedure 5(f). Under these circumstances, Ms. Baldwin met the time requirement for filing an appeal with this Court.

### B. Finality of the Board's Decision

The Board found that for the weeks ending April 11, 2020, and April 18, 2020, the five-year appeal limitation for nondisclosure in West Virginia Code § 21A-10-8 applies, and that WorkForce could pursue an overpayment for those weeks. For the week ending on May 9, 2020, the Board determined that the two-year appeal limitation in West Virginia Code § 21A-10-21 barred WorkForce from pursuing an overpayment. The Board remanded "for the sole purpose of determining the amount of overpayment for benefit week ending April 11, 2020, and for benefit week ending April 18, 2020."

West Virginia Code § 51-11-4(d)(8) provides that we do not have appellate jurisdiction over interlocutory appeals. Moreover, "[o]rdinarily, a judgment of reversal rendered by an intermediate appellate court which remands a cause for further proceedings in conformity with the opinion of the court is not final and, therefore, not appealable to a higher appellate court, so long as judicial action in the lower court is required." Syl. Pt 2,

13

*Paxton v. Crabtree*, 184 W. Va. 237, 400 S.E.2d 245 (1990). Adherence to this rule assures that appellate courts resolve entire claims, "rather than [having] appeal[s] on a piecemeal basis." *Id.* at 242, 400 S.E.2d at 250. Orders which only partially resolve a legal dispute are considered interlocutory and not final orders subject to appeal. "This rule, however, is limited to those situations where the intermediate appellate court finds that there are disputed issues of fact or law that have not been resolved by the trial court…This general rule does not apply to situations where the trial court has reversed or affirmed the agency decision on the merits." *Id.* (citations omitted).

Neither Ms. Baldwin nor WorkForce believe the Board's December 12, 2023, decision is interlocutory. We agree. *Paxton* is the seminal case which discusses whether a remand order renders an appeal interlocutory. In *Paxton*, the SCAWV considered a circuit court's order interlocutory when the order found that Ms. Paxton was subject to illegal discrimination but remanded the case to the Human Rights Commission for it determine the amount of Ms. Paxton's lost wages and whether Ms. Paxton attempted to mitigate her damages. In short, the circuit court's order left the material issue of damages unresolved.

The instant case is distinguishable from *Paxton*. Here, the remand for the calculation of "damages" does not require a factual hearing. Neither party challenges WorkForce's computation of the overpayment; the only issue in dispute is whether

14

WorkForce is permitted to pursue an overpayment. The Board's decision fully addresses the merits of whether WorkForce can pursue the overpayments, and we consider its December 12, 2023, decision a final order on the merits and subject to appeal.

## C. Jurisdiction of the Board

Ms. Baldwin argues that the Board did not have jurisdiction to determine that an overpayment by nondisclosure or misrepresentation was made and that we should not consider these issues on the merits. WorkForce alleges that Ms. Baldwin obtained unemployment compensation benefits through nondisclosure or misrepresentation. According to Ms. Baldwin, WorkForce is required to pursue all allegations of benefit overpayments based on nondisclosure and misrepresentation in circuit court, and WorkForce is prohibited from making administrative determinations of benefit overpayments in the case of nondisclosure or misrepresentation. We disagree.

Ms. Baldwin relies on West Virginia Code §§ 21A-10-8 and 21A-5-16 (1996). However, we must first look to West Virginia Code § 21A-7-11(c) (2011) which states "[i]f the final decision in any case determines that a claimant was not lawfully entitled to benefits paid to him or her pursuant to a prior decision, the amount of benefits paid are considered overpaid." West Virginia Code § 21A-7-11(c)(1) provides further that "[t]he commissioner shall recover such amount by civil action or in any manner provided

15

in this code for the collection of past-due payment and shall withhold, in whole or in part, as determined by the commissioner, any future benefits payable to the individual and credit the amount against the overpayment until it is repaid in full." In short, West Virginia Code § 21A-7-11(c) indicates administrative proceedings are necessary to determine overpayments.

Similarly, West Virginia Code § 21A-10-8 permits WorkForce to recover benefits that were paid due to nondisclosure and misrepresentation. It states the following:

> A person who, by reason of nondisclosure or misrepresentation, either by himself or another (irrespective of whether such nondisclosure or misrepresentation was known or fraudulent), has received a sum as a benefit under this chapter, shall either have such sum deducted from a future benefit payable to him or shall repay to the commissioner the amount which he has received. Collection shall be made in the same manner as collection of past-due payments against employers as set forth in section sixteen of article five of this chapter, which specifically includes the institution of civil action and collection procedures thereon enumerated in said section: Provided, That such collection or deduction of benefits shall be barred after the expiration of five years….

According to West Virginia Code § 21A-10-8, WorkForce may recover overpayments through offsets from future benefits and through civil collections. If WorkForce choses to pursue collections against a claimant, West Virginia Code § 21A-10-8 refers to West Virginia Code § 21A-5-16, which is a provision detailing the process by which WorkForce is permitted to collect money owed by employers that default on premiums. The same

16

process may be used when collecting overpayments from claimants who receive unemployment compensation benefits through nondisclosure or misrepresentation. West Virginia Code § 21A-5-16 reads, in part:

> (a) The commissioner in the name of the state may commence a civil action against an employer who, after due notice, defaults in any payment, interest or penalty thereon required by this chapter. Civil actions under this section shall be given preference on the calendar of the court over all other civil actions except petitions for judicial review under article seven of this chapter and cases arising under the workers' compensation law. Upon prevailing in any such civil action, the commissioner is entitled to recover attorneys' fees and costs of action from the employer.
>
> (b) Any payment, interest and penalty thereon due and unpaid under this chapter is a debt due the state in favor of the commissioner….It is a personal obligation of the employer immediately due and owing and is, in addition thereto, a lien that may be enforced as other judgment liens are enforced through the provisions of chapter thirty-eight of this code and the same shall be deemed by the circuit court to be a judgment lien for this purpose against all the property of the employer….:
>
> (c) In addition to all other civil remedies prescribed herein the commissioner may in the name of the state, after giving appropriate notice as required by due process, distrain upon any personal property, including intangibles, of any employer delinquent for any payment, interest and penalty thereon….
>
> (d) In case a business subject to the payments, interest and penalties thereon imposed under this chapter is operated in connection with a receivership or insolvency proceeding in any state court in this state…
>
> (e) The secretary of state of this state shall withhold the issuance of any certificate of dissolution or withdrawal in the case of any corporation organized under the laws of this state, or organized under the laws of another state and admitted to do

17

business in this state, until notified by the commissioner that all payments, interest and penalties thereon against any such corporation which is an employer under this chapter have been paid or that provision satisfactory to the commissioner has been made for payment.

(f) In any case where an employer defaults in payments, interest or penalties thereon, for as many as two calendar quarters, which quarters need not be consecutive, and remains delinquent after due notice, the commissioner may bring action in the circuit court of Kanawha County to enjoin that employer from continuing to carry on the business in which such liability was incurred….

(g) Amounts of payments and penalties collected under this section shall be deposited to the credit of the unemployment compensation trust fund….

Ms. Baldwin emphasizes that each subsection of West Virginia Code § 21A-5-16 describes civil actions and/or remedies which are only available in West Virginia circuit courts. For that reason, she argues WorkForce's sole avenue to determine and recover unemployment compensation benefits obtained through nondisclosure or misrepresentation is through circuit court proceedings. However, Ms. Baldwin is misinterpreting West Virginia Code § 21A-10-8, which describes the "recovery" of benefits received through nondisclosure. The case before us is an administrative proceeding to determine whether a benefit overpayment occurred. In fact, West Virginia Code § 21A-10-8 begins with an assumption that a claimant was overpaid due to nondisclosure or misrepresentation. It reads in part, "A person who, by reason of nondisclosure or misrepresentation, either by himself or another…has received a sum as a benefit under this chapter…." West Virginia Code § 21A-10-8. It does not mandate that

18

WorkForce must first bring a civil action to determine whether an overpayment was made. It only details the process by which WorkForce recoups money from claimants after an overpayment is determined. If WorkForce chooses to pursue a collection action directly against a claimant who received benefits through nondisclosure or misrepresentation, West Virginia Code § 21A-10-8 refers WorkForce to the collection process outlined in West Virginia Code § 21A-5-16.

*State ex rel. Radcliff v. Davidson*, 225 W. Va. 80, 689 S.E.2d 808 (2010), illustrates this process. In *Davidson*, WorkForce determined that Mr. Davidson was overpaid unemployment compensation benefits by knowingly making false statements. WorkForce notified Mr. Davidson that it was terminating his unemployment compensation benefits. Thereafter, an administrative hearing was held before an ALJ who found that WorkForce established an overpayment occurred. Mr. Davidson did not appeal the ALJ's finding, and WorkForce initiated collection proceedings in magistrate court through the provisions of West Virginia Code § 21A-5-16. The magistrate ruled that Mr. Davidson was overpaid, and he appealed to circuit court. The circuit court also found that Mr. Davidson was overpaid, but it ruled that WorkForce failed to establish the amount of overpayment. Therefore, the circuit court dismissed the case against Mr. Davidson.

WorkForce appealed to the SCAWV, which reversed the circuit court's ruling. SCAWV determined that WorkForce provided ample evidence of the overpayment

19

amount. It noted that administrative proceedings were held which established the amount of overpayment, and that Mr. Davidson did not appeal the ALJ's finding. SCAWV suggested that Mr. Davidson could challenge findings made in the administrative proceedings but determined that the ALJ's findings were evidence of an overpayment.

West Virginia Code § 21A-10-8 is specific to overpayments made due to nondisclosure and misrepresentation and states that civil proceedings may be initiated against a claimant after a benefit overpayment is determined. The facts of *Davidson* outline the administrative proceedings that take place before WorkForce may recover overpaid benefits. In summary, West Virginia Code § 21A-10-8 and *Davidson* establish that the Board has jurisdiction to determine whether an overpayment was made due to nondisclosure or misrepresentation.

### D. Notice and Sufficiency of the Administrative Record

Ms. Baldwin's remaining assignments of error are that the Board erred when it ruled that the five-year collection limit in West Virginia Code § 21A-10-8 applied to her overpayment for the weeks ending on April 11, 2020, and April 18, 2020, and that the Board committed error when it based its decision on West Virginia Code § 21A-10-8, which was raised for the first time on appeal. While WorkForce was not foreclosed from arguing about the applicability of West Virginia Code § 21A-10-8 to the Board, the timing

20

of receipt of WorkForce's written argument by counsel for Ms. Baldwin deprived her from addressing this argument before the Board made its decision. We agree with Ms. Baldwin that she was given inadequate notice regarding WorkForce's claim that the five-year collection period in West Virginia Code § 21A-10-8 applied, and therefore we remand this case to the Board with instructions to more fully develop the factual record regarding whether Ms. Baldwin made an error when she completed her weekly applications or was responsible for material nondisclosure or misrepresentation in her online portal submission.

If Ms. Baldwin merely made an error in her online portal benefit application forms, a two-year collection limit applies, and WorkForce is barred from collecting the benefit overpayment. West Virginia Code § 21A-10-21 addresses errors made by claimants and the two-year statute of limitations:

> A person who, by reason of error, irrespective of the nature of said error, has received a sum as a benefit under this chapter, shall either have such sum deducted from a future benefit payable to him or shall repay to the commissioner the amount which he has received. Collection shall be made in the same manner as collection of past due payment: Provided, That such collection or deduction of benefits shall be barred after the expiration of two years.

On the other hand, if Ms. Baldwin is responsible for a nondisclosure or misrepresentation that resulted in an overpayment, a five-year collection limit applies, and WorkForce may

21

pursue overpayment collections. West Virginia Code § 21A-10-8 addresses nondisclosure and misrepresentations by claimants and the five-year statute of limitations:

> A person who, by reason of nondisclosure or misrepresentation, either by himself or another (irrespective of whether such nondisclosure or misrepresentation was known or fraudulent), has received a sum as a benefit under this chapter, shall either have such sum deducted from a future benefit payable to him or shall repay to the commissioner the amount which he has received…Provided, That such collection or deduction of benefits shall be barred after the expiration of five years….

The transcript of the ALJ hearing reveals that WorkForce's only representative did not allege that Ms. Baldwin failed to disclose or misrepresented her wages. The ALJ did not discuss nondisclosure or misrepresentation. The ALJ mentioned that he and other administrative law judges had discussed whether a two or five-year collection limit applied to similar cases. Importantly, neither WorkForce nor the ALJ addressed West Virginia Code § 21A-10-8, or Ms. Baldwin's August 16, 2023, written arguments which state that she tried to contact WorkForce multiple times and completed her applications consistent with WorkForce's online portal.

West Virginia Code § 21A-7-8 (1978) provides that "[u]pon appeal from the determination of a deputy, an individual shall be entitled to a fair hearing and reasonable opportunity to be heard before an appeal tribunal…." WorkForce first alleged that the overpayment was due to nondisclosure or misrepresentation in its December 5, 2023,

22

written arguments to the Board which were mailed on the last day the Board accepted submissions from the parties. Ms. Baldwin represented at oral argument that she did not receive WorkForce's December 5, 2023, submission to the Board until after the Board decided the appeal of the ALJ's decision.

The Board's conclusions on review must be based on a record that gave the parties fair notice of the claims at issue and sufficient evidentiary development. Prior to the Board's decision, Ms. Baldwin had no notice that the benefit overpayment matter involved alleged nondisclosure or misrepresentation, and the record on which the Board based its decision lacks sufficient evidence to conclude that Ms. Baldwin failed to disclose or misrepresented her income given the asserted limitations of the online portal and Ms. Baldwin's asserted inability to receive timely guidance from WorkForce. By failing to provide Ms. Baldwin with notice that nondisclosure or misrepresentation was alleged, the record was not sufficiently developed regarding this issue, and therefore Ms. Baldwin was not given "a fair hearing and reasonable opportunity to be heard before an appeal tribunal…." West Virginia Code § 21A-7-8. Finally, the Board's decision fails to address Ms. Baldwin's argument that Executive Order 11-21 prohibits WorkForce from pursuing a benefit overpayment against her, given that WorkForce conceded that Ms. Baldwin did not engage in fraud in making her application on the online portal.

Accordingly, the record demonstrates that Ms. Baldwin was not given sufficient notice of WorkForce's claim that the overpayment was due to nondisclosure or

23

misrepresentation, and the administrative record is insufficient for us to review whether the Board erred in its determination. Moreover, the Board did not address the applicability of the Governor's March 29, 2021, Executive Order No. 11-21 to this case. Therefore, we vacate the Board's December 12, 2023, decision and remand to the Board with instructions to hold a new hearing. We direct the Board to allow the parties to address whether WorkForce's benefit overpayments to Ms. Baldwin for the weeks ending on April 11, 2020, and April 18, 2020, were the result of Ms. Baldwin's nondisclosure or misrepresentation in her online application for benefits, or the result of an error. To the extent the Board determines the overpayments resulted from Ms. Baldwin's nondisclosure or misrepresentation—and therefore that WorkForce's ability to collect the overpayments is subject to the five-year statute of limitations in West Virginia Code § 21A-10-8—we direct the Board to address whether Executive Order 11-21 prohibits WorkForce from attempting to collect the overpayments in this matter.

## IV. CONCLUSION

For the foregoing reasons, the Board's December 12, 2023, decision is vacated, and this case is remanded to the Board with instructions to hold a new hearing in this case to allow the development of a sufficient evidentiary record based on the parties' claims and defenses, and to issue a new decision on the merits consistent with this opinion.

Vacated and Remanded.

24