689 S.E.2d 808

STATE of West Virginia by Ronald E. RADCLIFF, Commissioner, Bureau of Employment Programs, Unemployment Compensation Division, Plaintiffs Below, Appellants,

v.

Perry D. DAVIDSON, Defendant Below, Appellee.

No. 34737.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 13, 2009.

Decided Jan. 29, 2010.

Mary Blaine McLaughlin, Esq., Unemployment Compensation Division, Charleston, WV, for Appellant.

Perry D. Davidson, Pro se.

PER CURIAM:

In this appeal from the Circuit Court of Cabell County, we are asked to consider a circuit court order dismissing, with prejudice, a collection action. The circuit court concluded that the appellant had not introduced evidence establishing the amount of damages it was entitled to collect from the appellee.

As set forth below, we find that the record clearly established the damages due to the appellant, and reverse the circuit court's order.

I.

The appellant in this case is the Commissioner of the Unemployment Compensation Division of Workforce West Virginia.[1] The Commissioner seeks to recover unemployment compensation that was improperly paid to the appellee, Perry D. Davidson.

In March 2000, Mr. Davidson was laid off from his job. Mr. Davidson applied for and began receiving unemployment compensation in July 2000.

On September 17, 2000, Mr. Davidson began working for a company called Clientlogic. Mr. Davidson apparently believed that the new job would require his skills working with computers. However, by his second day Mr.

Davidson discovered that the job only involved answering phone calls, and for a lower pay rate than he says he had been told. And so, on September 18th, Mr. Davidson quit his employment with Clientlogic.

On October 2, 2000, Mr. Davidson applied for and received unemployment compensation covering the week ending September 23rd. On the application, Mr. Davidson stated that he had not worked during that week. Several weeks later, the Commissioner discovered that Mr. Davidson had been employed by Clientlogic during the week ending September 23rd, and learned that he had voluntarily quit the job without cause.

The Commissioner moved to terminate Mr. Davidson's unemployment compensation, and a hearing was held before a deputy of the Commissioner. In an order dated November 14, 2000, the Commissioner ruled that Mr. Davidson had "knowingly made a false statement" on his October 2nd claim form when he said he had not worked. The Commissioner further ruled that all payments made to Mr. Davidson for the week of September 23rd, and the payments that were made thereafter,[2] were overpayments. The Commissioner determined—and the November 14th order plainly states the Commissioner's ruling—that Mr. Davidson was required to repay the Commissioner $1,962.00.

The November 14, 2000 order contains a recitation of Mr. Davidson's appeal rights, and stated that the "Final Date for Appeal is: 11/23/2000." The parties agree that Mr. Davidson did not appeal the November 14, 2000 order.[3]

Between March 2001 and February 2007, the Commissioner mailed Mr. Davidson at least 13 signed letters and 8 computer-generated notices asking for repayment of the

---

1. Prior to 2007, Workforce West Virginia was known as the Bureau of Employment Programs. *See W.Va.Code,* 21A–1–4 [2009].

2. Mr. Davidson received weekly unemployment compensation through October 28, 2000.

3. *W.Va.Code,* 21A–7–8 required Mr. Davidson to file his appeal within 8 days. The statute states, in part:

A claimant ... may file an appeal from the decision of the deputy within eight calendar days after notice of the decision has been delivered or mailed to the claimant and last employer as provided in section four of this article. The period within which an appeal from the decision of the deputy may be filed shall be stated in such notice. The decision of the deputy shall be final and benefits shall be paid or denied in accordance therewith unless an appeal is filed within such time.

$1,962.00, culminating in a letter dated February 21, 2007 warning Mr. Davidson of imminent magistrate court action. Mr. Davidson apparently never responded to these missives.

On April 5, 2007, the Commissioner filed suit against Mr. Davidson in the Magistrate Court of Cabell County, seeking to recover the overpayment plus court costs.[4] W.Va.Code, 21A–7–11 [1989], which permits the Commissioner to file such a suit to recover overpayments of benefits, states in pertinent part:

> If the final decision in any case determines that a claimant was not lawfully entitled to benefits paid to him pursuant to a prior decision, such amount of benefits so paid shall be deemed overpaid. The commissioner shall recover such amount by civil action or in any manner provided in this code for the collection of past-due payment and shall withhold, in whole or in part, as determined by the commissioner, any future benefits payable to the individual and credit such amount against the overpayment until it is repaid in full.

Remarkably, and without legal authority, it appears that a magistrate delayed action on the Commissioner's suit in order to allow Mr. Davidson to file a late appeal of the November 14, 2000 order with the Commissioner. Mr. Davidson failed to file the belated appeal, and on June 26, 2007 a judgment was entered in favor of the Commissioner for $1,962.00 plus $85.00 in court costs.

Mr. Davidson, acting *pro se*, appealed the magistrate court judgment to the Circuit Court of Cabell County. The circuit court conducted a bench trial on July 14, 2008. At the trial, three employees of Workforce West Virginia testified to Mr. Davidson's fraudulent receipt of unemployment benefits, and to the Commissioner's attempts to have Mr. Davidson voluntarily repay the $1,962.00 overpayment. Counsel for the Commissioner admitted into evidence numerous documents, including the November 14, 2000 final administrative order ruling that Mr. Davidson had improperly received $1,962.00 in unemployment benefits.

At the conclusion of the trial, and memorialized in an order dated July 15, 2008, the circuit court ruled that Mr. Davidson had improperly obtained unemployment compensation by "alleged fraud" in 2000, and concluded that the Commissioner's November 14, 2000 decision terminating Mr. Davidson's unemployment compensation had not been appealed. The circuit court found, however, that the Commissioner had "failed to produce any evidence which established the amount of damages that it is entitled to as a result of overpayment of unemployment compensation benefits" to Mr. Davidson. Based upon this finding, the circuit court determined that the Commissioner had "failed to meet its burden of proof," set aside the magistrate court judgment, and dismissed the Commissioner's collection action with prejudice.

The Commissioner now appeals the circuit court's July 15, 2008 order.

## II.

The Commissioner asserts on appeal that the circuit court's finding—that the amount of damages sought by the Commissioner had not been established—was clearly wrong.

---

**4.** The Commissioner is authorized to collect overpayments of unemployment benefits from a claimant's future benefits, or to collect the overpayments by filing a lawsuit against the claimant. In cases of fraud, such as that involving Mr. Davidson, the Commissioner is required to file the lawsuit within 10 years of the filing of the claim. W.Va.Code, 21A–10–8 [1990] states:

> A person who, by reason of nondisclosure or misrepresentation, either by himself or another (irrespective of whether such nondisclosure or misrepresentation was known or fraudulent), has received a sum as a benefit under this chapter, shall either have such sum deducted from a future benefit payable to him or shall repay to the commissioner the amount which he has received. Collection shall be made in the same manner as collection of past-due payments against employers as set forth in section sixteen of article five of this chapter, which specifically includes the institution of civil action and collection procedures thereon enumerated in said section: Provided, That such collection or deduction of benefits shall be barred after the expiration of five years, except for known or fraudulent nondisclosure or misrepresentation which shall be barred after the expiration of ten years, from the date of the filing of the claim in connection with which such nondisclosure or misrepresentation occurred.

After a careful examination of the record, we agree.

When reviewing a circuit court's judgment reached following a bench trial, this Court has previously held that:

> In reviewing challenges to the findings and conclusions of the circuit court made after a bench trial, a two-pronged deferential standard of review is applied. The final order and the ultimate disposition are reviewed under . an abuse of discretion standard, and the circuit court's underlying factual findings are reviewed under a clearly erroneous standard. Questions of law are subject to a *de novo* review.

Syllabus Point 1, *Public Citizen, Inc. v. First Nat'l Bank in Fairmont*, 198 W.Va. 329, 480 S.E.2d 538 (1996). Regarding a circuit court's factual findings following a bench trial, we have stated that:

> Appellate oversight is ... deferential, and we review the trial court's findings of fact following a bench trial, including mixed fact/law findings, under the clearly erroneous standard. If the trial court makes no findings or applies the wrong legal standard, however, no deference attaches to such an application. Of course, if the trial court's findings of fact are not clearly erroneous and the correct legal standard is applied, its ultimate ruling will be affirmed as a matter of law.

*Phillips v. Fox*, 193 W.Va. 657, 662, 458 S.E.2d 327, 332 (1995) (footnote omitted).

The record in the trial court plainly establishes that Mr. Davidson was overpaid $1,962.00, a fact that was adjudicated and stated in the Commissioner's November 14, 2000 final order. Mr. Davidson never appealed that order within the statutory time limit in 2000; even when improperly given an opportunity to file a late appeal by a magistrate in 2007, Mr. Davidson did not act. Further, Mr. Davidson never challenged the Commissioner's overpayment determination before the circuit court. Instead, Mr. Davidson's evidence and argument centered upon whether it was fair for the Commissioner to

have ruled on November 14, 2000 that his October 2, 2000 application for benefits—which failed to note Mr. Davidson's two days of employment with Clientlogic—was fraudulent. Accordingly, we believe that the circuit court was required to accept the Commissioner's November 14, 2000 administrative ruling as final and conclusive, "regardless of whether the court would have reached a different conclusion on the same set of facts." *Frank's Shoe Store v. West Virginia Human Rights Com'n*, 179 W.Va. 53, 57, 365 S.E.2d 251, 254 (1986), *citing Anderson v. City of Bessemer City*, 470 U.S. 564, 574–75, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985).

### III.

After a careful review of the record, we believe that the evidence presented to the trial court clearly established that the appellant, the Commissioner, is entitled to recover $1,962.00 as overpayments from the appellee, Mr. Davidson.

Accordingly, the circuit court's July 15, 2008 order is reversed, and the case is remanded for entry of judgment in favor of the Commissioner.[5]

Reversed and remanded.

---

5. In its judgment order, the circuit court should also consider *W.Va.Code,* 21A–5–16(a) [1996], which states that if the Commissioner prevails "in any such civil action, the commissioner is entitled to recover attorneys' fees and costs of action[.]"