IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2025 Term

_____

No. 24-504

_____

FILED

May 1, 2025

released at 3:00 p.m.
C. CASEY FORBES, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

STATE OF WEST VIRGINIA *ex rel.*,
SCOTT A. ADKINS, in his official capacity as
Acting Commissioner of WorkForce West Virginia, and
WORKFORCE WEST VIRGINIA,
Petitioners,

v.

THE HONORABLE JENNIFER BAILEY,
Judge of the Circuit Court of Kanawha County, West Virginia, and
DEBORAH BEHELER BALDWIN, DENNIS R. CHAMBERS,
LINDA WARNER, ASHLEAH MURPHY, KELLY HARDY, and BRITTANY
GANDEE, on their behalf and on behalf of all others similarly situated,
Respondents.

_____

PETITION FOR WRIT OF PROHIBITION

WRIT GRANTED

_____

Submitted: April 9, 2025
Filed: May 1, 2025

Roberta F. Green, Esq.
Michael D. Dunham, Esq.
Shuman McCuskey Slicer, PLLC
Charleston, West Virginia
Counsel for Petitioners

John B. McCuskey, Esq.
Attorney General
David E. Gilbert, Esq.
Deputy Attorney General

L. Dante diTrapano, Esq.
David H. Carriger, Esq.
D. Christopher Hedges, Esq.
Caldwell Luce diTrapano, PLLC
Charleston, West Virginia
Ben Salango, Esq.
Salango Law, PLLC
Charleston, West Virginia
Patrick Salango, Esq.
Salango Legal Firm, PLLC

Charleston, West Virginia
Counsel for Amicus Curiae
State of West Virginia

Charleston, West Virginia
Counsel for Respondents

JUSTICE ARMSTEAD delivered the Opinion of the Court.

SYLLABUS BY THE COURT

1.     "The general rule is that where an administrative remedy is provided by statute or by rules and regulations having the force and effect of law, relief must be sought from the administrative body, and such remedy must be exhausted before the courts will act." Syl. Pt. 1, *Daurelle v. Traders Fed. Sav. & Loan Ass'n of Parkersburg*, 143 W. Va. 674, 104 S.E.2d 320 (1958).

2.     "When a statute is clear and unambiguous and the legislative intent is plain, the statute should not be interpreted by the courts, and in such case[,] it is the duty of the courts not to construe but to apply the statute." Syl. Pt. 5, *State v. Gen. Daniel Morgan Post No. 548, Veterans of Foreign Wars*, 144 W. Va. 137, 107 S.E.2d 353 (1959).

ARMSTEAD, Justice:

Petitioners ("WorkForce")[1] seek a writ prohibiting enforcement of three orders entered by the Circuit Court of Kanawha County (1) granting Respondents'[2] writ of mandamus; (2) denying WorkForce's motion to dismiss; and (3) granting leave for Respondents to file a second amended complaint. WorkForce is tasked with determining whether overpayments of unemployment compensation benefits occurred and, if so, the reason for the overpayment. Respondents' complaint alleges that through this process, WorkForce engaged in illegal collection activity. According to Respondents, "[a]ll of the collections at issue in this case are time-barred by [West Virginia Code] § 21A-10-21 as a matter of law[.]" Respondents' lawsuit seeks two main forms of relief: (1) injunctive and/or mandamus relief directing WorkForce to stop engaging in collection activity that Respondents deem illegal; and (2) refunding the overpayments that WorkForce "illegally" collected.

The administrative process WorkForce utilizes for making overpayment determinations is set forth by the Legislature through a series of statutes. The

---

[1] Petitioners are WorkForce West Virginia and Scott A. Adkins, in his official capacity as Acting Commissioner of WorkForce West Virginia. Workforce, which includes the Division of Unemployment Compensation, is part of the West Virginia Department of Commerce. *See* W. Va. Code § 5F-2-1.

[2] Respondents are the plaintiffs below: Deborah Beheler Baldwin, Dennis R. Chambers, Linda Warner, Ashleah Murphy, Kelly Hardy, and Brittany Gandee. While the Honorable Jennifer Bailey, Judge of the Circuit Court of Kanawha County, West Virginia, is also a named Respondent herein, for ease of the reader, we refer to the plaintiffs collectively as "Respondents."

1

administrative process provides a claimant with an appeal that includes (1) a hearing before an administrative law judge ("ALJ"); (2) the right to appeal the ALJ's decision to the Board of Review ("BOR"); and (3) the right to appeal the BOR's decision to the Intermediate Court of Appeals of West Virginia ("ICA"). Claimants are required to exhaust their administrative remedies prior to seeking judicial review. West Virginia Code § 21A-7-19 provides this plain, unambiguous direction: "A person claiming an interest under the provisions of this article shall exhaust his remedies before the board before seeking judicial review." Respondents did not exhaust their administrative remedies prior to filing this lawsuit. This Court has held that "[t]he general rule is that where an administrative remedy is provided by statute or by rules and regulations having the force and effect of law, *relief must be sought from the administrative body*, *and such remedy must be exhausted before the courts will act*." Syl. Pt. 1, *Daurelle v. Traders Fed. Sav. & Loan Ass'n of Parkersburg*, 143 W. Va. 674, 104 S.E.2d 320 (1958) (emphasis added).

Upon review,[3] we conclude that the circuit court lacked subject matter jurisdiction because Respondents have not exhausted their administrative remedies. Therefore, we grant the writ of prohibition and remand this case to the circuit court with directions for it to grant WorkForce's motion to dismiss.

---

[3] We express our appreciation to the State of West Virginia for the amicus curiae brief it submitted. The State agrees with WorkForce that the circuit court lacked subject matter jurisdiction and urges this Court to grant the writ of prohibition. For ease of the reader, we attribute all arguments in favor of granting the writ to WorkForce.

# I. FACTUAL AND PROCEDURAL BACKGROUND

WorkForce is a State agency that includes, among other agency divisions, the Division of Unemployment Compensation. W. Va. Code § 21A-1-4. Respondents, Deborah Beheler Baldwin ("Ms. Baldwin") and Dennis R. Chambers ("Mr. Chambers"), applied for and received unemployment compensation benefits in 2020 during the COVID-19 pandemic. Before discussing the specific facts underlying Respondents' claims, we note that West Virginia Code §§ 21A-10-8 and 21A-10-21 are the two main statutes that the parties and the circuit court addressed. Because these are the two main statutes at issue, we include them in full at the outset.

West Virginia Code § 21A-10-8 provides:

Recovery of benefits paid on misrepresentation; limitations

> A person who, by reason of nondisclosure or misrepresentation, either by himself or another (irrespective of whether such nondisclosure or misrepresentation was known or fraudulent), has received a sum as a benefit under this chapter, shall either have such sum deducted from a future benefit payable to him or shall repay to the commissioner the amount which he has received. Collection shall be made in the same manner as collection of past-due payments against employers as set forth in section sixteen of article five of this chapter, which specifically includes the institution of civil action and collection procedures thereon enumerated in said section: Provided, That such collection or deduction of benefits shall be barred after the expiration of five years, except for known or fraudulent nondisclosure or misrepresentation which shall be barred after the expiration of ten years, from the date of the filing of the claim in connection with which such nondisclosure or misrepresentation occurred.

West Virginia Code § 21A-10-21 provides:

3

Recovery of benefits paid through error; limitation

> A person who, by reason of error, irrespective of the nature of said error, has received a sum as a benefit under this chapter, shall either have such sum deducted from a future benefit payable to him or shall repay to the commissioner the amount which he has received. Collection shall be made in the same manner as collection of past due payment: Provided, That such collection or deduction of benefits shall be barred after the expiration of two years.

We now turn to Respondents' claims, the allegations contained in their lawsuit, and the circuit court's rulings in the three orders at issue.

## **Ms. Baldwin**

Ms. Baldwin received unemployment compensation benefits for approximately three months in 2020. In July and August of 2023, WorkForce sent letters to Ms. Baldwin requesting more information about her claim and notifying her of a potential overpayment. On August 9, 2023, WorkForce sent Ms. Baldwin a letter entitled "Overpayment Determination," stating its conclusion that "[a]n overpayment determination has been made on your unemployment compensation claim that you have received benefits [sic] payments to which you were not entitled" in the amount of $2,054. The letter then provided Ms. Baldwin with an explanation of her appeal rights. Ms. Baldwin submitted a letter stating her intention to appeal. WorkForce then sent the ALJ and Ms. Baldwin a list of documents it planned to present during the hearing. These documents included the "Overpayment Determination" that contained the following block quote on the second page of the document:

4

§ 21A-10-21 West Virginia Unemployment Compensation Law:

A person who, by reason of error, irrespective of the nature of said error, has received a sum as a benefit under this chapter, shall either have such sum deducted from a future benefit payable to him or shall repay to the commissioner the amount which he has received.[4]

On September 26, 2023, Ms. Baldwin and WorkForce appeared for a hearing before the ALJ.  By order entered on October 11, 2023, the ALJ ruled in Ms. Baldwin's favor, finding that she had received an overpayment, but concluding that her case was subject to the two-year statute of limitation contained in West Virginia Code § 21A-10-21, which applies to overpayments paid by reason of error, rather than overpayments that occur due to nondisclosure, misrepresentation, or fraud.  Applying West Virginia Code § 21A-10-21, the ALJ found that WorkForce was time-barred from recovering the overpayments made to Ms. Baldwin.

WorkForce appealed the ALJ's decision to the BOR and, for the first time, asserted that the overpayments occurred due to nondisclosure or misrepresentation, not error.  On December 12, 2023, the BOR affirmed, in part, and reversed, in part, the ALJ's

---

[4] Respondents note that this block quote does not accurately reflect the heading of the statute and omits the statute's final sentence.  The heading of the statute is "Recovery of benefits paid through error; limitation."  The omitted last sentence of West Virginia Code § 21A-10-21 provides: "Collection shall be made in the same manner as collection of past due payment: Provided, That such collection or deduction of benefits shall be barred after the expiration of two years."

ruling. The BOR concluded that, in two instances, the overpayments to Ms. Baldwin occurred based on nondisclosure or misrepresentation.[5] The BOR found that West Virginia Code § 21A-10-8 provides that the applicable statute of limitations for recoupment of overpayments arising from misrepresentation is five years, and "that WorkForce . . . is not prohibited from pursuing an overpayment" for the two specific instances of misrepresentation it identified. Additionally, the BOR determined that one overpayment was made to Ms. Baldwin due to error, rather than misrepresentation, and affirmed the ALJ's conclusion that WorkForce was time-barred from recovering that overpayment.[6] The BOR's decision included detailed directions on how Ms. Baldwin could appeal its decision to the ICA. On January 26, 2024, Ms. Baldwin appealed the BOR's ruling to the ICA.

In her appeal to the ICA, Ms. Baldwin raised three assignments of error: (1) the BOR did not have jurisdiction over benefit overpayments that occurred due to misrepresentation because WorkForce may only pursue such allegations in circuit courts

---

[5] Specifically, the BOR found that Ms. Baldwin worked and received wages for the weeks ending April 11, 2020, and April 18, 2020, and that Ms. Baldwin failed to disclose that information on her weekly claim certifications. The BOR made clear that this was not "a fraud case," and noted that Ms. Baldwin testified that her failure to disclose that she had worked and received wages for those two weeks was a mistake.

[6] The BOR found that the overpayment made for the week ending May 9, 2020, was due to error, not misrepresentation. Therefore, the BOR determined that this overpayment was controlled by West Virginia Code § 21A-10-21, which has a two-year statute of limitation. During oral argument, counsel for WorkForce stated that the two-year statute of limitation for an overpayment based on error under West Virginia Code § 21A-10-21 begins to run on the date the overpayment occurred.

6

pursuant to West Virginia Code § 21A-10-8; (2) the BOR erred by concluding that the five-year statute of limitation in West Virginia Code § 21A-10-8 applied; and (3) Ms. Baldwin was not given adequate notice that WorkForce was going to argue that West Virginia Code § 21A-10-8 applied to her case. *Baldwin v. Adkins*, 251 W. Va. 127, ___, 909 S.E.2d 640, 644 (Ct. App. 2024). The ICA issued its decision in *Baldwin* in November of 2024. After discussing the relevant statutes and caselaw, the ICA rejected Ms. Baldwin's first argument, concluding that the BOR "has jurisdiction to determine whether an overpayment was made due to nondisclosure or misrepresentation." 251 W. Va. at ____, 909 S.E.2d at 649. In so ruling, the ICA explained that

> Ms. Baldwin is misinterpreting West Virginia Code § 21A-10-8, which describes the "recovery" of benefits received through nondisclosure. The case before us is an administrative proceeding to determine whether a benefit overpayment occurred. In fact, West Virginia Code § 21A-10-8 begins with an assumption that a claimant was overpaid due to nondisclosure or misrepresentation.

251 W. Va. at ___, 909 S.E.2d at 648.

However, the ICA agreed with Ms. Baldwin that she was given inadequate notice regarding WorkForce's claim that the five-year collection period in West Virginia Code § 21A-10-8 applied, and therefore remanded the case to the BOR with instructions to more fully develop the factual record regarding whether the overpayments to Ms. Baldwin resulted from an error or whether she was responsible for material "nondisclosure or misrepresentation[.]" 251 W. Va. at ___, 909 S.E.2d at 650. Ms. Baldwin's administrative appeal remains active and ongoing.

7

**Mr. Chambers**

Mr. Chambers received unemployment compensation benefits for approximately five months in 2020. Mr. Chambers alleges that after receiving these benefits in 2020, he was not contacted by WorkForce until January 19, 2023, when it sent a letter notifying him that he had been overpaid in the amount of $4,106.[7] Mr. Chambers alleges that this letter did not inform him that he had the right to appeal this overpayment determination. Mr. Chambers repaid the full amount, $4,106, to WorkForce in January 2023.

**Subsequent Procedural History**

Ms. Baldwin filed the instant lawsuit in November of 2023, "on behalf of herself and all others similarly situated." Respondents filed an amended complaint in January of 2024, adding Mr. Chambers as a named plaintiff. The amended complaint sought "declaratory and injunctive relief, restitution, as well as relief in mandamus and/or prohibition and damages," based on Respondents' contention that WorkForce was engaging in illegal collection activity "well beyond WorkForce's two-year time limit for doing so." As set forth in the amended complaint, "[t]he claims sought in this action broadly seek relief for the negligent, reckless and/or intentional misconduct of WorkForce for attempting to demand from Plaintiffs, and from others similarly situated, unemployment benefits it alleges were incorrectly and non-fraudulently distributed."

---

[7] WorkForce disputes this contention and claims that Mr. Chambers "received several correspondences from WorkForce" prior to January of 2023.

In February of 2024, WorkForce filed a motion to dismiss[8] Respondents' amended complaint. WorkForce's arguments included an assertion that the circuit court lacked jurisdiction because Respondents had not exhausted their administrative remedies:

> Plaintiffs challenge the lawfulness of [WorkForce's] ability to recoup the overpayments of benefits. For Ms. Baldwin, the administrative process is ongoing, and Plaintiffs' Amended Complaint is an attempt to subvert those ongoing administrative proceedings by seeking relief that effectively amounts to Plaintiffs' impermissibly asking a Circuit Court to exercise concurrent jurisdiction over a lawful administrative appeals process. Because the administrative proceedings are ongoing, Plaintiff Baldwin has failed to exhaust her administrative remedies, depriving this [Circuit] Court of subject matter jurisdiction.

In May of 2024, Respondents sought leave to amend their complaint to add additional named plaintiffs to the case. The circuit court held a hearing on July 25, 2024, during which it addressed (1) WorkForce's motion to dismiss; (2) Respondents' motion to amend their complaint; and (3) Respondents' request for mandamus relief. Following the hearing, the circuit court entered the three orders at issue granting Respondents a writ of

---

[8] WorkForce filed the motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the West Virginia Rules of Civil Procedure. Rule 12(b)(1) provides for dismissal of a complaint upon a motion asserting lack of jurisdiction over the subject matter, and Rule 12(b)(6) allows for dismissal upon a motion for failure to state a claim upon which relief can be granted. W. Va. R. Civ. Proc. 12(b).

9

mandamus, denying WorkForce's motion to dismiss, and granting leave for Respondents to file their second amended complaint to add additional named plaintiffs.[9]

In its order denying WorkForce's motion to dismiss, the circuit court found that "exhaustion of administrative remedies is not necessary." It concluded that "requiring exhaustion of remedies for likely thousands of citizens affected by the allegations in Plaintiffs' Amended Complaint regarding [WorkForce's] collections exceeding the § 21A-10-21 time bar would be duplicative and futile, while a court of general jurisdiction may engage in fact finding and make determinations on whether to order extraordinary relief and other remedies." It also ruled that the

> exhaustion of remedies is unnecessary because Mandamus and other extraordinary remedies are not options in [WorkForce's] administrative adjudication process, and Plaintiff[s] [have] pled sufficient irreparable harm if ordered to expend individual resources exhausting all remedies; [WorkForce's] § 21A-10-21 collections in excess of the two-year time bar, by contrast, may be addressed in single orders by a court of general jurisdiction.

After concluding that exhaustion of administrative remedies was not required, the circuit court determined that (1) West Virginia Code § 21A-10-21 bars WorkForce from collecting benefits paid in error after two years have passed; and (2) West

---

[9] The additional named plaintiffs are Linda Warner, Ashleah Murphy, Kelly Hardy, and Brittany Gandee. While these additional plaintiffs were added to the case, the circuit court's order granting Respondents' motion to file its second amended complaint provides that "no new counts or causes of action have been added and the factual issues in the litigation remain the same." Because no new causes of action were added to the case, we find it unnecessary to address the factual circumstances describing the alleged overpayments to the four additional named plaintiffs.

Virginia Code § 21A-10-8 requires WorkForce to institute a civil action in a circuit court both to pursue collections and for "adjudications for overpayments based on nondisclosure, misrepresentation, or fraud[,]" thereby prohibiting WorkForce from determining if an overpayment was caused by nondisclosure, misrepresentation, or fraud "in its administrative adjudication process[.]" Relying on this interpretation, the circuit court ruled that any "collections initiated by [WorkForce] with an offer for claimants to file an administrative appeal are, by definition, § 21A-10-21 'error' proceedings with a two-year time bar[,]" and WorkForce advising claimants of their ability to appeal constitutes a "de facto conce[ssion] that the two-year time bar applies[.]" Based on the foregoing, the circuit court denied WorkForce's motion to dismiss.

Employing the same interpretation of West Virginia Code §§ 21A-10-8 and -21, the circuit court granted Respondents' request for mandamus and injunctive relief,[10] ordering WorkForce to:

> A. Comply with their mandatory, non-discretionary duty requiring that any collections of alleged overpayments resulting from error be undertaken no later than two (2) years following Respondents' payment of the benefits at issue;
>
> B. Comply with their mandatory, non-discretionary duty requiring that any collections of alleged overpayments resulting from error be pursued only under an Overpayment

---

[10] While the title of the circuit court's order was "Order Granting Writ of Mandamus," the order granted both injunctive and mandamus relief. "Mandamus lies to require the discharge by a public officer of a nondiscretionary duty." Syl. Pt. 3, *State ex rel. Greenbrier Cnty. Airport Auth. v. Hanna*, 151 W. Va. 479, 153 S.E.2d 284 (1967). Conversely, "injunctive relief stops or prevents performance of an act, it does not direct that an act be performed." *Blair v. Brunett*, 248 W. Va. 495, 503, 889 S.E.2d 68, 76 (2023).

11

Determination or deputy decision issued and mailed no later than two (2) years following Respondents' payment of the benefits at issue;

C. Comply with their mandatory, non-discretionary duty requiring that any overpayment collections or adjudications undertaken in any process offering or involving an administrative hearing or administrative adjudication be pursued only as benefit payments by reason of error pursuant to W[.] Va. Code § 21A-10-21.

D. Suspend all collections of alleged overpayments resulting from error, or sought by WorkForce in any process offering or involving an administrative hearing, based on an Overpayment Determination or deputy decision dated more than two (2) years following Respondents' payment of the benefits at issue;

E. Preserve all data and documents regarding unemployment claims initiated since March 1, 2020; and

F. Assemble all data regarding all claimants from whom WorkForce has engaged in collections based on a WorkForce Overpayment Determination or deputy decision dated more than two (2) years following payment, regarding any payments made from March 1, 2020 through March 1, 2022, for review under the Court's direction at a later date.

Following entry of these orders, WorkForce filed the instant petition for a writ of prohibition with this Court. By order entered on February 10, 2025, we issued a rule to show cause why the writ should not be granted and scheduled this matter for oral argument.

## II. STANDARD OF REVIEW

WorkForce argues that the circuit court lacked jurisdiction because Respondents have not exhausted their administrative remedies.[11]  This Court has stated that "[a] party seeking a writ of prohibition must prove either that (1) the lower tribunal completely lacked personal or subject matter jurisdiction or (2) the lower tribunal exceeded its legitimate powers." *State ex rel. W. Va. Div. of Corr. & Rehab. v. Ferguson*, 248 W. Va. 471, 477, 889 S.E.2d 44, 50 (2023).  "When a court is attempting to proceed in a cause without jurisdiction, prohibition will issue as a matter of right regardless of the existence of other remedies." *State ex rel. Farber v. Mazzone*, 213 W. Va. 661, 665, 584 S.E.2d 517, 521 (2003) (internal quotation and citation omitted).[12]  Additionally, this Court has observed that

---

[11] "There are numerous definitions of jurisdiction, the substance of all of which is the power to hear and determine a cause." *Johnston v. Hunter*, 50 W. Va. 52, 54, 40 S.E. 448, 449 (1901).  "Jurisdiction consists of two elements. One of these elements is jurisdiction of the subject matter and the other is jurisdiction of the person. Jurisdiction of the subject matter must exist as a matter of law." Syl. Pt. 4, in part, *W. Va. Secondary Sch. Activities Comm'r v. Wagner*, 143 W. Va. 508, 102 S.E.2d 901 (1958).

[12] We set forth the following standard for issuance of a writ of prohibition when it is alleged that a lower court is exceeding its authority:

> In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way

(continued . . .)

13

[w]hen a petition raises a jurisdictional challenge, "we must determine . . . whether it is jurisdictional in the sense of requiring a decision upon facts or a decision upon a pure question of law." *Lewis v. Fisher*, 114 W. Va. 151, 154-155, 171 S.E. 106, 107 (1933). "If it rests upon a determination of fact, prohibition will not lie." *Id.* at 155, 171 S.E. at 107. If, however, the challenge "rests upon the determination of a question of law, prohibition will lie if the trial court has exceeded its jurisdiction or usurped a jurisdiction that in law does not exist." *Id.* Because the question is one of law, we apply a *de novo* standard of review.

*State ex rel. PrimeCare Med. of W. Va., Inc. v. Faircloth*, 242 W. Va. 335, 341, 835 S.E.2d 579, 585 (2019). With the foregoing in mind, we turn to the parties' arguments.

## III. ANALYSIS

While WorkForce raises multiple assignments of error,[13] the threshold issue is whether the circuit court had subject matter jurisdiction over this case. WorkForce

that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight.

Syl. Pt. 4, *State ex rel. Hoover v. Berger*, 199 W. Va. 12, 483 S.E.2d 12 (1996).

[13] WorkForce argues that the circuit court erred by finding that: (1) pursuant to West Virginia Code § 21A-10-8, WorkForce is prohibited from administratively determining if

(continued . . .)

14

contends that the circuit court lacked jurisdiction because Respondents have not exhausted their administrative remedies. In support of this argument, WorkForce asserts that the legislatively created administrative process to determine whether a benefit overpayment occurred, which includes a determination of why the overpayment occurred (i.e., error, nondisclosure, misrepresentation, or fraud), mandates that each claimant exhaust their administrative remedies before seeking judicial review. WorkForce emphasizes that the exhaustion requirement is set forth by the plain, unambiguous language of West Virginia Code § 21A-7-19: "A person claiming an interest under the provisions of this article shall exhaust his remedies before the board before seeking judicial review." Further, WorkForce argues that the circuit court erred by finding that "requiring exhaustion of remedies . . . would be duplicative and futile[.]"

After review, we agree with WorkForce and conclude that the circuit court lacked jurisdiction because Respondents failed to exhaust their administrative remedies

---

an overpayment was made due to a claimant's nondisclosure or misrepresentation; (2) pursuant to West Virginia Code § 21A-10-8, WorkForce is required to file a civil action to determine if an overpayment was made by nondisclosure, misrepresentation, or fraud; (3) the initiation of an administrative proceeding for an overpayment determination is a de facto concession that West Virginia Code § 21A-10-21 and that statute's two-year statute of limitations applies to the collection of the overpayment; (4) Respondents are entitled to mandamus and injunctive relief; (5) any attempt by WorkForce to determine if an overpayment was caused by nondisclosure, misrepresentation, or fraud in an administrative proceeding violates Article III, Section 10 of the West Virginia Constitution; (6) WorkForce is prohibited from engaging in administrative hearings related to alleged overpayments based on an overpayment determination or deputy's decision dated more than two years following payment of the benefits at issue; and (7) WorkForce is required to assemble data, thereby requiring it to create documents for discovery.

15

prior to bringing this lawsuit. Because the circuit court lacked jurisdiction, WorkForce is entitled to its requested writ of prohibition.

We begin our analysis with a discussion of the administrative process that unemployment benefit claimants are required to exhaust prior to seeking judicial review. After reviewing this process, we discuss the doctrine of exhaustion of administrative remedies. Finally, we explain our conclusion that the circuit court erred by ruling that Respondents were not required to exhaust their administrative remedies prior to bringing this lawsuit.

Before a claimant is eligible to receive unemployment compensation benefits, WorkForce must find that certain requirements have been met. *See* W. Va. Code § 21A-6-1. The Legislature has provided that deputies shall be appointed to investigate and determine whether a claimant is eligible for unemployment benefits. *See* W. Va. Code § 21A-7-3 ("The commissioner shall appoint deputies to investigate all claims, and to hear and initially determine all claims for benefits excepting claims relating to labor disputes or disqualification under subdivision four of section three, article six of this chapter.").[14] The deputy is required to determine whether a claim is valid and, if valid, the deputy "shall determine: (1) The week with respect to which benefits will commence; (2) The amount of benefit; [and] (3) The maximum duration of benefits." W. Va. Code § 21A-7-4(d). If a

---

[14] *See also* W. Va. Code § 21A-2-13 ("For the original determination of claims under this chapter, the commissioner shall appoint a necessary number of deputies as his or her representatives."); W. Va. Code § 21A-7-4(a) ("A deputy shall promptly investigate all claims.").

claimant disagrees with a deputy's decision, the claimant may appeal and a hearing will be scheduled with an ALJ. W. Va. Code § 21A-7-8. Following the ALJ's decision, the claimant may appeal to the BOR. W. Va. Code §§ 21A-7-9 and -10.[15] Procedural rules govern the appeal process. *See* W. Va. Code St. R. § 84-1-1. One subsection of the procedural rule provides that

> [t]he purpose of the hearing process shall be to receive and consider, as expeditiously and as fairly as possible, evidence and information relevant to the determination of the rights of the parties and to provide a review of the Deputy's decisions and determinations with regard to the granting or denial of any award, or the entry of any Order, or the granting or denial of any modification or change with respect to former findings. Orders or awards are made pursuant to the West Virginia Unemployment Compensation Law, W. Va. Code, §21A-1-1 et seq., as amended.

W. Va. Code St. R. § 84-1-2.2.[16]

Finally, a claimant or any other interested party may appeal to the ICA at the conclusion of the administrative process. *See* W. Va. Code § 21A-7-17 ("The decision of the board shall be final and benefits shall be paid or denied in accordance therewith, unless

---

[15] The claimant's "last employer" and the Commissioner are also parties that are entitled to file an appeal under West Virginia Code § 21A-7-9.

[16] Pursuant to Respondent's procedural rules, a claimant may file a late appeal for good cause shown. *See* W. Va. Code St. R. § 84-1-3.4. ("Late Appeals.-- All appeals must be filed in accordance with the time periods set forth in these rules. . . . For good cause shown, the Board or its designee may accept and process a late appeal. A decision refusing a late appeal may be appealed to the Board."). In the instant case, Mr. Chambers alleges that the overpayment determination letter failed to inform him that he had the right to appeal. We note that any claimant may file a late appeal and assert a "good cause" argument pursuant to West Virginia Code St. R. § 84-1-3.4.

a claimant, last employer, or other interested party appeals to the Intermediate Court of Appeals within 30 days after mailing of notification of the board's decision[.]").[17] While an interested party may appeal to the ICA at the conclusion of the administration process, the Legislature has mandated that the interested party exhaust their administrative remedies before seeking judicial review: "A person claiming an interest under the provisions of this article shall exhaust his remedies before the board before seeking judicial review." W. Va. Code § 21A-7-19.

Next, we review our law on the doctrine of exhaustion of administrative remedies. In *Hicks v. Mani*, 230 W. Va. 9, 736 S.E.2d 9 (2012), we recognized that

> under the exhaustion of administrative remedies doctrine, where a claim is cognizable in the first instance by an administrative agency alone, judicial interference is withheld until the administrative process has run its course. This doctrine applies when exclusive jurisdiction exists in the administrative agency and the courts have only appellate, as opposed to original, jurisdiction to review the agency's decision.

230 W. Va. at 13, 736 S.E.2d at 13 (*quoting* Franklin D. Cleckley et al., *Litigation Handbook on the West Virginia Rules of Civil Procedure*, § 12(b)(1), at 339-40 (4th ed. 2012)). Our general rule is "that where an administrative remedy is provided by statute or by rules and regulations having the force and effect of law, relief *must* be sought from the

---

[17] After the ICA issues a final order or judgment, an interested party may appeal that ruling to this Court. *See* W. Va. Code § 51-11-10(a) ("A party in interest may petition the Supreme Court of Appeals for appeal of a final order or judgment of the Intermediate Court of Appeals in accordance with rules promulgated by the Supreme Court of Appeals.").

administrative body, and such remedy *must* be exhausted before the courts will act." Syl.

Pt. 1, in part, *Daurelle v. Traders Fed. Sav. & Loan Ass'n*, 143 W. Va. 674, 104 S.E.2d

320 (emphasis added).[18]    This Court has observed that the doctrine of exhaustion of

administrative remedies serves a number of useful purposes including

> (1) permitting the exercise of agency discretion and expertise
> on issues requiring these characteristics; (2) allowing the full
> development of technical issues and a factual record prior to
> court review; (3) preventing deliberate disregard and
> circumvention of agency procedures established by Congress
> [or the Legislature]; and (4) avoiding unnecessary judicial
> decision by giving the agency the first opportunity to correct
> any error.

*Sturm v. Bd. of Educ. of Kanawha Cnty.*, 223 W. Va. 277, 282, 672 S.E.2d 606, 611 (2008)

(internal citation omitted).

We have recognized exceptions to our general rule requiring exhaustion of

administrative remedies.  In syllabus point one of *State ex rel. Bd. of Educ. of Kanawha*

*County v. Casey*, 176 W. Va. 733, 349 S.E.2d 436 (1986), we held that "[t]he doctrine of

exhaustion of administrative remedies is inapplicable where resort to available procedures

would be an exercise in futility."  Further, we have held that "[t]he rule which requires the

exhaustion of administrative remedies is inapplicable where no administrative remedy is

provided by law." Syl. Pt. 2, *Daurelle*, 143 W. Va. 674, 104 S.E.2d 320.  Additionally,

---

[18] We have recognized this general rule in a number of cases. *See, e.g.*, *State ex rel. Fields v. McBride*, 216 W. Va. 623, 609 S.E.2d 884 (2004); *State ex rel. Miller v. Reed*, 203 W. Va. 673, 510 S.E.2d 507 (1998); *Hechler v. Casey*, 175 W. Va. 434, 333 S.E.2d 799 (1985); *McGrady v. Callaghan*, 161 W. Va. 180, 244 S.E.2d 793 (1978); and *State ex rel. Burchett v. Taylor*, 150 W. Va. 702, 149 S.E.2d 234 (1966).

"[t]his Court will not require the exhaustion of administrative remedies where such remedies are duplicative or the effort to obtain them futile." Syl. Pt. 6, *Wiggins v. E. Associated Coal Corp.*, 178 W. Va. 63, 357 S.E.2d 745 (1987).

Having set forth the applicable administrative process and our law on exhaustion of administrative remedies, we examine the circuit court's conclusion that Respondents were not required to exhaust their administrative remedies in the instant case. Before discussing the circuit court's specific rationale for this conclusion, we emphasize that the Legislature has spoken directly to this issue: "A person claiming an interest under the provisions of this article *shall exhaust his remedies before the board before seeking judicial review*." W. Va. Code § 21A-7-19 (emphasis added). Where the statutory language is plain, we apply it without further construction. "When a statute is clear and unambiguous and the legislative intent is plain, the statute should not be interpreted by the courts, and in such case[,] it is the duty of the courts not to construe but to apply the statute." Syl. Pt. 5, *State v. Gen. Daniel Morgan Post No. 548, Veterans of Foreign Wars*, 144 W. Va. 137, 107 S.E.2d 353 (1959). Accord Syl. Pt. 2, *Crockett v. Andrews*, 153 W. Va. 714, 172 S.E.2d 384 (1970) ("Where the language of a statute is free from ambiguity, its plain meaning is to be accepted and applied without resort to interpretation."); Syl. Pt. 1, *Dunlap v. State Comp. Dir.*, 149 W. Va. 266, 140 S.E.2d 448 (1965) ("Where the language of a statute is plain and unambiguous, there is no basis for application of rules of statutory construction; but courts must apply the statute according to the legislative intent plainly expressed therein."); Syl. Pt. 2, *State v. Epperly*, 135 W. Va. 877, 65 S.E.2d 488 (1951)

20

("A statutory provision which is clear and unambiguous and plainly expresses the legislative intent will not be interpreted by the courts but will be given full force and effect.").

The circuit court did not identify any ambiguity in West Virginia Code § 21A-7-19, nor did it specifically address why it declined to apply this statute. Instead of addressing the plain language of this statute, the circuit court relied on multiple exceptions that apply to our general rule that a person must exhaust their administrative remedies before seeking judicial review. We disagree with the circuit court's analysis.

The circuit court concluded that Respondents were not required to exhaust their administrative remedies because doing so would be "duplicative and futile," and because "[m]andamus and other extraordinary remedies are not options in [WorkForce's] administrative adjudication process." The circuit court determined that these specific exceptions applied after arriving at one general conclusion that was the foundation for its entire ruling on this issue:

> The conduct at issue in [Respondents'] Amended Complaint does not turn on factual circumstances individualized as to all claimants, *but instead on a single course of conduct by an agency in contravention of a single statute, affecting many.* This Court CONCLUDES that exhaustion of remedies is not necessary to determine whether [WorkForce has] repeatedly pursued W. Va. Code § 21A-10-21 collections under [WorkForces'] administrative adjudication process for alleged overpayments occurring more than two (2) years prior.

(Emphasis added).

21

The circuit court found that under West Virginia Code § 21A-10-8, WorkForce could only determine whether an overpayment based on nondisclosure or misrepresentation occurred in circuit court. Thus, the court concluded that WorkForce was engaging in illegal collection activity by pursuing overpayments for nondisclosure or misrepresentation through the administrative process. According to the circuit court, WorkForce could only use the administrative process to pursue overpayments based on error, as set forth in West Virginia Code § 21A-10-21. Under West Virginia Code § 21A-10-21, overpayments based on error are subject to a two-year statute of limitation. Thus, the circuit court concluded that any collection activity WorkForce pursued through the administrative process that (1) occurred beyond two years of the overpayment, or (2) was based on nondisclosure or misrepresentation, constituted "illegal collection activity." Relying on this interpretation of West Virginia Code §§ 21A-10-8 and -21, the circuit court found that all of WorkForce's attempted overpayment collections in this case are time-barred by West Virginia Code § 21A-10-21, as a matter of law, and that requiring Respondents to exhaust their administration remedies would be duplicative and futile.

We disagree with the circuit court's interpretation of West Virginia Code §§ 21A-10-8 and -21 because it is inconsistent with (1) the plain language of those statutes and the statutory administrative process; (2) the ICA's ruling in *Baldwin*; and (3) this Court's ruling in *State ex rel. Radcliff v. Davidson*, 225 W. Va. 80, 689 S.E.2d 808 (2010).

First, the circuit court's ruling is inconsistent with the plain language of West Virginia Code §§ 21A-10-8 and -21. Both of these statutes address how WorkForce may

22

*recover* an overpayment after an overpayment determination has been made. West

Virginia Code § 21A-10-8 provides, in relevant part,

> A person who, *by reason of nondisclosure or misrepresentation*, either by himself or another (irrespective of whether such nondisclosure or misrepresentation was known or fraudulent), has received a sum as a benefit under this chapter, shall either have such sum deducted from a future benefit payable to him or shall repay to the commissioner the amount which he has received.

(Emphasis added). Similarly, West Virginia Code § 21A-10-21 provides, in relevant part,

"A person who, *by reason of error*, irrespective of the nature of said error, has received a

sum as a benefit under this chapter, shall either have such sum deducted from a future

benefit payable to him or shall repay to the commissioner the amount which he has

received." (Emphasis added). The plain language of both of these statutes begins with an

assumption that a determination has been made as to why the claimant received an

overpayment: "by reason of nondisclosure or misrepresentation" (§ 21A-10-8) or "by

reason of error" (§ 21A-10-21). Neither of these statutes address how or when the

determination is made. Instead, as set forth above, the Legislature has provided a detailed

statutory roadmap setting forth the administrative process that results in a determination

that a claimant has been overpaid. Further, the plain, unambiguous statutory language

setting forth the contours of the administrative process makes clear that the overpayment

determination occurs during the administrative process. West Virginia Code

§ 21A-7-11(c) provides: "If *the final decision* in any case *determines that a claimant was*

*not lawfully entitled to benefits* paid to him or her pursuant to a prior decision, *the amount*

23

*of benefits paid are considered overpaid.*" (Emphasis added). Stated differently, the administrative process results in a "final decision" that determines whether an overpayment has been made. If a final decision made during the administrative process determines that an overpayment has been made due to: (1) error, then West Virginia Code § 21A-10-21 controls the collection of the overpayment and a two-year statute of limitation applies to the recovery of the overpayment; (2) nondisclosure or misrepresentation, then West Virginia Code § 21A-10-8 controls the collection of the overpayment and a five-year statute of limitation applies to the recovery of the overpayment.[19] We find no language in either West Virginia Code §§ 21A-10-8 or -21 that supports the circuit court's conclusion that WorkForce is prohibited from utilizing the administrative process to determine whether an overpayment occurred due to nondisclosure, misrepresentation, or fraud.

Notably, in Ms. Baldwin's appeal to the ICA, the ICA directly addressed and rejected the interpretation of West Virginia Code §§ 21A-10-8 and -21 that the circuit court adopted in the instant case.[20] In *Baldwin*, the ICA addressed Ms. Baldwin's argument that "WorkForce is required to pursue all allegations of benefit overpayments based on nondisclosure and misrepresentation in circuit court, and WorkForce is prohibited from

---

[19] West Virginia Code § 21A-10-8 also controls when the overpayment is due to fraud. A ten-year statute of limitation applies when the overpayment was due to fraud.

[20] This Court is not bound by the ICA's determination and we have not directly reviewed the ICA's ruling in *Baldwin*. However, because the ICA's determination is relevant to the issue before us, we examine its ruling. We note that the ICA's decision was issued in November of 2024, after the circuit court entered the three orders at issue herein. Thus, the circuit court did not have the benefit of the ICA's ruling.

making administrative determinations of benefit overpayments in the case of nondisclosure or misrepresentation." *Baldwin*, 251 W. Va. ____, 909 S.E.2d at 646-47. The ICA reviewed the statutory administrative process, as well as caselaw from this Court, and rejected Ms. Baldwin's argument. In so ruling, it noted that Ms. Baldwin

> argues WorkForce's sole avenue to determine and recover unemployment compensation benefits obtained through nondisclosure or misrepresentation is through circuit court proceedings. However, Ms. Baldwin is misinterpreting West Virginia Code § 21A-10-8, which describes the "recovery" of benefits received through nondisclosure. The case before us is an administrative proceeding to determine whether a benefit overpayment occurred. In fact, West Virginia Code § 21A-10-8 begins with an assumption that a claimant was overpaid due to nondisclosure or misrepresentation. It reads in part, "A person who, by reason of nondisclosure or misrepresentation, either by himself or another . . . has received a sum as a benefit under this chapter. . . ." West Virginia Code § 21A-10-8. It does not mandate that WorkForce must first bring a civil action to determine whether an overpayment was made. It only details the process by which WorkForce recoups money from claimants after an overpayment is determined.

*Id.*, 251 W. Va. at ____, 909 S.E.2d at 648.

In sum, the ICA rejected Ms. Baldwin's argument (which the circuit court adopted in the instant case) and found that WorkForce may determine whether an overpayment occurred due to nondisclosure or misrepresentation during the administrative process.

Like the ICA, this Court has previously recognized that WorkForce may determine whether an overpayment has occurred through its administrative process. In *Davidson*, WorkForce determined, through its administrative process, that a claimant

25

receiving unemployment compensation benefits had been overpaid based on misrepresentation. 225 W. Va. at 81, 689 S.E.2d at 809. The claimant did not appeal this administrative determination. *Id.* WorkForce then sought to recover the overpayment in magistrate court, which was followed by an appeal to circuit court. 225 W. Va. at 82, 689 S.E.2d at 810. The circuit court ruled that the claimant had fraudulently obtained unemployment compensation benefits but found that WorkForce failed "to produce any evidence which established the amount of damages that it is entitled to as a result of overpayment of unemployment compensation benefits." *Id.* On appeal to this Court, we noted that the "record … plainly establishe[d] that [the claimant] was overpaid $1,962.00, a fact that was adjudicated … in the Commissioner's … final order" and was "never appealed." 225 W. Va. at 83, 689 S.E.2d at 811. Therefore, we found that "the circuit court was required to accept the Commissioner's … administrative ruling as final and conclusive, regardless of whether the court would have reached a different conclusion on the same set of facts." *Id.* (internal quotation omitted). The Court's reference to a final "administrative ruling" demonstrates the Court's recognition that there is a difference between the administrative process that established the claimant's overpayment and the subsequent litigation to recover it.

Based on the plain language of West Virginia Code §§ 21A-10-8 and -21, the detailed administrative statutory process that specifically references overpayments, as well as the ICA's ruling in *Baldwin* and this Court's *Davidson* decision, we find that the circuit court's interpretation of West Virginia Code §§ 21A-10-8 and -21 was erroneous.

26

Because we find the circuit court's interpretation of these statutes was erroneous, we further conclude that the circuit court erred by finding that Respondents were not required to exhaust their administrative remedies prior to bringing this lawsuit.[21] In so ruling, we

<hr />

[21] It is clear that, absent the circuit court's erroneous interpretation of West Virginia Code §§ 21A-10-8 and -21, there is no support for its ruling that Respondents were not required to exhaust their administrative remedies because doing so would be "duplicative and futile." First, regarding the futility exception, there is no evidence that an ALJ or the BOR would not rule in a claimant's favor in a particular overpayment determination case. In fact, one of the Respondents herein, Ms. Baldwin, pursued such administrative process and the ALJ ruled in her favor. The BOR subsequently ruled, in part, in her favor. Therefore, we find no support for the circuit court's finding that a claimant participating in the mandatory administrative process would be an exercise in futility. *See Redd v. McDowell Cnty. Bd. of Educ.*, No. 15-0566, 2016 WL 2970303, at \*5 (W. Va. May 20, 2016) (memorandum decision) ("[W]e find that there is no evidence that the grievance board would have not ruled in petitioner's favor if she had filed a timely, meritorious grievance with regard to her termination as an assistant principal and subsequent transfer. Therefore, we determine that filing a grievance about that decision would not have been an exercise in futility.").

Additionally, Respondents have created the "duplicative" process by filing a lawsuit in circuit court prior to exhausting their administrative remedies. Because the Legislature has enacted a mandatory administrative process, a claimant cannot avoid this process by creating a parallel judicial proceeding by filing a lawsuit before exhausting their administrative remedies in clear violation of West Virginia Code § 21A-7-19. Therefore, we find no support for the circuit court's ruling that Respondents met the duplicative exception to the exhaustion requirement.

Further, the circuit court found that Respondents were not required to exhaust their administrative remedies because "[m]andamus and other extraordinary remedies are not options in [WorkForce's] administrative adjudication process." We rejected a similar argument in *Redd*, in which the petitioner argued that she was not required to exhaust her administrative remedies because a grievance board was not able to award the type of monetary damages she sought in circuit court. *Redd*, 2016 WL 2970303, at \*5. This Court found that "the grievance board's inability to award certain types of damages did not prevent the doctrine of exhaustion of administrative remedies from applying to this case." *Id.* at \*5, fn.13. We agree and find that Respondents' request for mandamus relief in the

(continued . . .)

reiterate that the Legislature has provided clear, unambiguous direction on this issue: "A person claiming an interest under the provisions of this article shall exhaust his remedies before the board before seeking judicial review." W. Va. Code § 21A-7-19. Respondents did not exhaust their administrative remedies prior to bringing this lawsuit. Therefore, the circuit court lacked subject matter jurisdiction over this case, and WorkForce is entitled to its requested writ of prohibition.[22]

## IV. CONCLUSION

instant case does not relieve them from exhausting their administrative remedies. *See State ex rel. Gooden v. Bonar*, 155 W. Va. 202, 210, 183 S.E.2d 697, 702 (1971) ("Mandamus is available only when all administrative remedies have been exhausted and when there is no other available adequate remedy."). Accord *Mounts v. Chafin*, 186 W. Va. 156, 160, 411 S.E.2d 481, 485 (1991); and *Capitol Bus. Equip., Inc. v. Gates*, 155 W. Va. 260, 263-264, 184 S.E.2d 125, 127 (1971). *See also* Syl. Pt. 4, *State ex rel. Smith v. Thornsbury*, 214 W. Va. 228, 588 S.E.2d 217 (2003) ("The rule of exhausting administrative remedies before actions in courts are instituted is applicable, even though the administrative agency cannot award damages[,] if the matter is within the jurisdiction of the agency." (Internal quotations and citations omitted)). Based on the foregoing, we find that Respondents' request for mandamus relief does not relieve them from exhausting their administrative remedies.

Finally, as explained above, we have determined that the circuit court erroneously applied the common law futility and duplicative exceptions under the specific facts of this case. Because we find that these exceptions do not apply under the specific facts of this case, we find it unnecessary to address whether these common law exceptions could ever apply to prevent the application of the mandatory direction the Legislature provided in West Virginia Code § 21A-7-19, directing that a person must exhaust their administrative remedies before seeking judicial review.

[22] Because we have found that the circuit court lacked subject matter jurisdiction and that WorkForce is entitled to its requested writ of prohibition, it is unnecessary for this Court to address the circuit court's orders granting (1) mandamus and injunctive relief, and (2) Respondents' motion to file a second amended complaint.

The petition for a writ of prohibition is granted. We remand this case to the circuit court with directions for it to grant WorkForce's motion to dismiss.

Writ Granted.